GURNEY P. HOOD, COMMISSIONER OF BANKS, EX REL., BANK OF SUMMER-FIELD, v. HOWARD SIMPSON AND NATIONAL SURETY COMPANY, HARRY N. LEVEY, ANCILLARY RECEIVER, AND GEORGE S. VAN SCHAICK, REHABILITATOR.

(Filed 20 June, 1934.)

**1. Contracts B a: Principal and Surety A b—**

General laws in force at the time of the execution of a contract become a part thereof as though expressly incorporated in its terms, and a surety bond may not limit the surety's liability contrary to statutory provisions relating thereto.

**2. Same—**

The courts will generally adopt the construction given a contract by the parties thereto before differences arise thereunder.

**3. Principal and Surety B d—Each renewal of bank cashier's bond held to constitute separate contract under facts of this case.**

The cashier of a bank was elected for the term of one year by the bank's board of directors, and required to furnish bond in the penal sum of $10,000 in accordance with its by-laws. The cashier was reëlected for a term of one year each successive year until the bank's insolvency, and the board of directors required that he should give bond, and determined the penal sum thereof by resolution adopted each separate year, but the penal sum required was not altered. Upon taking office the cashier gave the required bond in defendant surety company, the period of the bond being indeterminate, and each year thereafter the bond was renewed, the bank paying the initial premium and the yearly renewal premiums. Nine years thereafter defendant surety company executed a superseding bond with substantially the same provisions, but containing a rider which

HOOD, COMR. OF BANKS, *v.* SIMPSON.

stipulated that the surety's liability should not be cumulative and should not exceed the penal sum of the "bond or bonds" superseded. The superseding bond was renewed in like manner for four successive years. Before the expiration of one year from the date the original bond was executed chapter 4, section 61, Public Laws of 1921, went into effect, providing that active officers and employees of banks, before entering upon their duties, should give bond. (Amended by chapter 18, Extra Session, 1921; chapter 47, Public Laws of 1927) (N. C. Code, 221(m). After the closing of the bank it was discovered that the cashier had embezzled $20,000, the amount embezzled in no one year exceeding $10,000. *Held*, construing the bonds together with the statutes applicable and the words "bond or bonds" contained in the rider, each and every renewal of the bond and the payment of the premium thereon constituted a separate and independent contract, and the surety is liable in the sum of $20,000, and the provision in the rider that its liability should be limited to $10,000 is void as being against public policy, it being contrary to the statutory provisions.

SCHENCK, J., took no part in the consideration or decision of this case.

APPEAL by defendants from *Sink, J.,* at October Term, 1933, of GUILFORD. Affirmed.

The following agreement is in the record: "It is hereby stipulated and agreed by and between the attorneys for plaintiff and the attorney for the National Surety Company, George S. Van Schaick, rehabilitator, and Harry N. Levey, ancillary receiver, the only defendant who answered in the above entitled case, that a jury trial is hereby expressly waived; that the following are the material and pertinent facts to be found by the court, and that the court may render judgment upon the admissions in the pleadings and the facts herein agreed upon, to wit: (1) That George S. Van Schaick, superintendent of insurance of the State of New York, was on 29 April, 1933, duly appointed rehabilitator for the defendant, National Surety Company, by the Supreme Court of the State of New York; that said George S. Van Schaick, rehabilitator as aforesaid, voluntarily makes himself a party defendant in this action and adopts the answer of the National Surety Company heretofore filed in this cause. (2) That on or about 12 May, 1933, Harry N. Levey, a resident and citizen of Guilford County, North Carolina, was duly and regularly appointed ancillary receiver for North Carolina for the defendant, National Surety Company; that said Harry N. Levey, ancillary receiver as aforesaid, voluntarily makes himself a party defendant in this action and adopts the answer of the National Surety Company heretofore filed in this cause. (3) That the Bank of Summerfield is a North Carolina banking corporation chartered on 19 December, 1919. (4) That at a meeting of the stockholders of the Bank of Summerfield, duly and regularly held on 20 March, 1920, by-laws were unanimously adopted containing, among others, the following pro-

visions: 'Section 14. The officers of said bank shall be a president, vice-president, cashier, and also such other officers as may be required from time to time for the prompt dispatch and orderly conduct of its business, which said officers shall be elected by the directors annually, and said officers may act as such without ceasing to be members of the board of directors. The cashier shall, *ex officio,* be secretary of the bank. The officers, except the cashier, shall hold their offices for the term for which they are elected, and until their successors are elected and qualified, and the cashier and the other appointed officers shall hold their offices during the pleasure of the board of directors.'

'Section 19. The bonds of the officers shall be fixed by the board of directors each year at their first meeting after their elections. The said bonds shall be approved by the board of directors, and the said board shall also have the power and discretion of fixing the bonds of the clerk, bookkeepers, and other subordinate officers connected with the bank.' (5) That at a meeting of the board of directors of the Bank of Summerfield duly and regularly held on 6 January, 1920, Howard Simpson was elected cashier for the term of one year. (6) That at the regular annual meeting of the board of directors held each year thereafter, including the year of 1931, Howard Simpson was each and every year duly elected cashier of the Bank of Summerfield for the term of one year. (7) That at each and every regular annual meeting of the board of directors the question of the cashier's bond was fully considered, the amount thereof fixed at $10,000, and upon each and every election of the said Howard Simpson as cashier, he was ordered to give bond in the sum of $10,000; that no actual notice thereof was given to the defendant, National Surety Company. (8) That the Bank of Summerfield did not open for business until on or about 22 July, 1920, at which time bond was furnished by the said Howard Simpson, as cashier, in the sum of $10,000, with National Surety Company as surety thereon, said bond bearing date of 22 July, 1920, and a copy being attached to and made a part of this stipulation. (9) That thereafter premium was paid each and every year by the Bank of Summerfield on the aforesaid bond dated 22 July, 1920, to and including the year 1928. (10) That on 27 April, 1929, Howard Simpson furnished the Bank of Summerfield with bond in the sum of $10,000, with National Surety Company as surety thereon, said bond bearing date of 27 April, 1929, and a copy being attached to and made a part of this stipulation. (11) That upon the execution of the aforesaid bond dated 27 April, 1929, a 'rider' was executed, accepted by the Bank of Summerfield, and attached to said bond, a copy of said 'rider' being attached to and made a part of this stipulation. (12) That on 23 June, 1931, Gurney P. Hood, Commissioner of Banks, took possession of the Bank of Summerfield, after

HOOD, COMR. OF BANKS, *v.* SIMPSON.

which time it was ascertained that Howard Simpson had embezzled funds in excess of $20,000. (13) That full notice of said embezzlement was given and proof of loss thereafter furnished to the National Surety Company, in complete compliance with the terms of the aforesaid bonds. (14) That from 22 July, 1920, to 22 March, 1929, the embezzlement of Howard Simpson amounted to $8,000; that from 22 March, 1929, to 22 March, 1930, the embezzlement of Howard Simpson amounted to $2,000; and that from 22 March, 1930, to 20 June, 1931, the embezzlement of Howard Simpson amounted to $10,000.

"It is further stipulated and agreed that if the court shall decide as a matter of law that the bond executed on 22 July, 1920, together with each renewal thereof, and the bond and rider executed on 27 April, 1929, and each and every renewal thereof, constitutes one continuous contract and bond with a single liability limiting loss occurring during the entire period to $10,000, then and in that event the judgment of said court shall fix plaintiff's recovery at said sum of $10,000, but if the court shall fail to hold said bonds and their respective renewals to be one continuous bond and contract, then and in that event it is stipulated and agreed that plaintiff's recovery shall be fixed at the sum of $20,000 and the cost of the action. It is further stipulated and agreed that this stipulation relates only to the facts and that the parties hereto may appeal to the Supreme Court from any conclusions or rulings of law by the court on the facts hereinbefore agreed to. This 11 October, 1933. Shuping & Hampton, attorneys for plaintiff. Kenneth M. Brim, attorney for defendants."

Exhibit "A" dated 22 July, 1920, the material parts for the consideration of this appeal: "The National Surety Company (surety), in consideration of the premium of ............... dollars ($ ..........), payable on 24 July during each and every year that this bond shall continue in force, hereby agrees to make good within sixty (60) days after satisfactory proof thereof to Bank of Summerfield, Summerfield, North Carolina, employer any loss not exceeding $10,000, which the employer may sustain by reason of any act of personal dishonesty, forgery, theft, larceny, embezzlement, wrongful conversion or abstraction on the part of Howard Simpson, employee, in any position in the employer's service, committed after 24 July, 1920, and before the termination of this bond. . . . Any claim against the surety hereunder must be duly presented to the surety company within six (6) months after the date of the termination of the surety's liability hereunder for any reason, and no action or proceeding shall be brought hereunder unless begun within two (2) years after the employer shall have given notice of such claim. None of the provisions of this bond shall be altered or waived, except in writing, under seal, by the surety, executed by its president or a vice-

president, attested by its secretary or an assistant secretary. Signed, sealed and dated this 22 July, 1920."

Exhibit "B," dated 27 April, 1929, the material parts for the consideration of this appeal: "Know all men by these presents, that the National Surety Company of New York, N. Y., as surety (hereinafter called surety) does hereby agree to pay unto Bank of Summerfield, Summerfield, North Carolina (hereinafter called employer), within ninety days after presentation of proof of loss, as hereinafter provided, the amount of any loss not exceeding ten thousand and no/100 dollars, which the employer may sustain in respect of any moneys, funds, securities or other personal property of the employer, or for which the employer may be responsible, through any act of fraud, dishonesty, larceny, theft, embezzlement, forgery, misappropriation, wrongful abstraction or misapplication, or any other dishonest or criminal act or omission committed by Howard Simpson (hereinafter called the employee), acting alone or in collusion with others, while in any position in the continuous employ of the employer, after 12 o'clock noon of 22 March, 1929, but before the employer shall become aware of any default on the part of the employee, and discovered before the expiration of three years from the termination of such employment or cancellation of this bond, whichever may first happen."

"Superseded suretyship rider. (Attachable when our own or another company's bond or bonds are superseded.) Rider to be attached to Fidelity Bond No. R-188418, executed by the National Surety Company (hereinafter called 'company'), effective 22 March, 1929, in favor of Bank of Summerfield, Summerfield, North Carolina (hereinafter called 'employer'), and covering Howard Simpson. Whereas, the employer has been carrying a fidelity bond or bonds as follows: Bond No. 1531757, Howard Simpson, cashier, Bank of Summerfield, amount $10,000, dated 24 July, 1920; and whereas, said bond or bonds have been canceled, allowed to expire, or have terminated and have been superseded by the bond to which this rider is attached (hereinafter called 'superseding bond') as of the effective date thereof. Now, therefore, it is hereby understood and agreed: (1) The superseding bond shall be construed to cover any loss that would have been recoverable under any such superseded bond had it continued in force, if such loss be discovered after the period of limitation provided in the superseded bond and before the expiration of the time fixed in the superseding bond for the discovery of losses thereunder. (2) Any such loss shall be adjusted by the company upon the terms, conditions and limitations of said superseded bond, but nothing herein contained or in the superseding bond shall be construed to render the company liable for a larger amount than would have been recoverable under such superseded bond. (3)

Should a loss occur which is covered partly by a superseded bond and partly by the superseding bond, the amount recoverable from the company shall not exceed that which would have been recoverable under the terms of the superseded bond, plus the amount recoverable under the terms of the superseding bond for the period not covered by the bond superseded, provided always that the liability of the company will not be cumulative or exceed the largest single amount applicable to the employee causing the loss as fixed by either the superseded or the superseding bond. In witness whereof, the company has caused this instrument to be signed by its president and attested by its secretary and countersigned by an authorized representative, this 27 April, 1929. National Surety Company—B. A. W. St. John, president. Attest: Herbert J. Hewitt, secretary, countersigned by William N. Smith. (Seal.) The foregoing is agreed to and accepted by Bank of Summerfield, Summerfield, North Carolina. By G. S. Miles, president, employer."

The judgment of the court below is as follows: "This cause coming on to be heard, and being heard before his Honor, H. Hoyle Sink, judge presiding at the civil term of Guilford County Superior Court, beginning 30 October, 1933, upon the stipulation and agreed statement of facts in the record, and the court being of the opinion that the plaintiff is entitled to recover of the defendant, National Surety Company, George S. Van Schaick, rehabilitator, and Harry N. Levey, ancillary receiver, the sum of $20,000 and the cost of this action. It is now, therefore, ordered, adjudged and decreed that the plaintiff recover of the defendants, National Surety Company, George S. Van Schaick, rehabilitator, and Harry N. Levey, ancillary receiver, the sum of $20,000 and the cost of this action to be taxed by the clerk. This 12 December, 1933."

Defendants, appellants, excepted to and assign as error the decision of the court that plaintiff was entitled to recover an amount in excess of the penalty of the bond. Appellants excepted to and assign as error the failure of the court to hold that plaintiff could not recover in excess of the penalty of the bond, to wit, $10,000. Appellants excepted to and assign as error the signing of the judgment set out in the record, and appeal to the Supreme Court.

*Shuping & Hampton for plaintiff.*
*Kenneth M. Brim for defendants.*

CLARKSON, J. The question involved: When a bond which guarantees the fidelity of a bank cashier and guarantees the bank against loss by reason of embezzlement, etc., of said cashier, is executed for an in-

definite term and thereafter is kept in force by the payment of annual premiums, does the fact that said cashier was elected at the time said bond was executed for a term of one year and was thereafter reëlected each year for a like term, and was required at each reëlection to give bond, all of which was expressly directed by the by-laws of said bank and in conformity with the statutes requiring the officer to give bond, constitute said bond one continuous transaction or is each and every renewal thereof a separate and distinct bond? We think under the facts and circumstances of this case, that each and every renewal thereof is a separate and distinct bond or independent contract.

From the agreed statement of facts, it will be seen that the by-laws of the Bank of Summerfield provided in section 14 thereof that the cashier of the Bank of Summerfield "shall be elected by the directors annually," with the further proviso that "the officers, except the cashier, shall hold their offices for the term for which they are elected and until their successors are elected and qualified, and the cashier and the other appointed officers shall hold their offices during the pleasure of the board of directors." It further appears from said statement of facts that the by-laws of said Bank of Summerfield provided in section 19 that "the bonds of the officers shall be fixed by the board of directors each year at their first meeting after their election." It appears likewise from the statement of facts that Howard Simpson was elected cashier of the Bank of Summerfield on 6 January, 1920, for the term of one year, and was reëlected at the regular annual meeting of the board of directors of the Bank of Summerfield each and every year thereafter until and including the year 1931. It further appears that at each and every annual meeting of the board of directors the question of the bond of the defendant, Howard Simpson, as cashier, was fully considered the amount fixed at $10,000 at each and every annual meeting and at each and every annual meeting upon the reëlection of the defendant, Howard Simpson as cashier, he was ordered to give bond in the sum of $10,000. It further appears from said statement of facts that though the defendant, Howard Simpson, was first elected on 6 January, 1920, that the bank did not open for business until about 22 July, 1920, at which time he gave bond for the sum of $10,000 with the defendant, National Surety Company as surety, said bond bearing date of 22 July, 1920 and being set forth in the record; that thereafter premium was paid each and every year by the Bank of Summerfield on the aforesaid bond to and including the year 1928; that on or about 27 April, 1929, following the annual reëlection of the defendant, Howard Simpson, as cashier of the Bank of Summerfield and the order of the board of directors of said bank for him to give bond in the sum of $10,000, that said Howard Simpson furnished bond in the sum of

$10,000 with the defendant, National Surety Company, as surety thereon, which said bond bears date of 27 April, 1929, and is set forth in the record; that upon the execution of the aforesaid bond bearing date of 27 April, 1929, a "superseded suretyship rider" was executed and accepted by the bank, which said rider recited the execution of both of the above referred to bonds and attempted to limit loss recoverable or covered by said bonds; that upon the reëlection of the defendant, Howard Simpson, each year after 27 April, 1929, and the order of the board of directors for the defendant, Howard Simpson, to give bond as cashier in the sum of $10,000, said Bank of Summerfield paid the premium on said bond to and including the year 1931. It further appears from said statement of facts that the plaintiff took possession of said Bank of Summerfield on 23 June, 1931, after which it was found the defendant, Howard Simpson, had embezzled funds of the Bank of Summerfield as follows: from 22 July, 1920, to 22 March, 1929, $8,000; from 22 March, 1929, to 22 March, 1930, $2,000; and from 22 March, 1930, to 30 June, 1931, $10,000; that full notice of said embezzlement was furnished the defendant, National Surety Company, and thereafter proof of loss was likewise furnished in complete compliance with the terms of said bonds. In addition to the statement of facts heretofore referred to there is the further statement of facts limiting the case to the sole question of whether or not under the facts in this case, the defendant, National Surety Company, is surety on one continuous contract or bond from 22 July, 1920, to and including 23 June, 1931, the day on which plaintiff took possession of the Bank of Summerfield as Commissioner of Banks, with a single and sole liability of $10,000, it being expressly stipulated and agreed that if the defendant is in fact surety on one continuous contract that its liability is only $10,000, but if not on one continuous contract, then its liability shall be $20,000. The court below held on the facts, that the bond was not one continuous contract and that plaintiff was entitled to recover. We think this holding correct.

The first bond was issued by defendant surety company, for $10,000, 22 July, 1920, and the premium was paid for one year. Thereafter, the General Assembly passed this act: Public Laws of 1921, chap. 4, sec. 61, ratified 18 February, 1921, before the year expired, which is as follows: "*Officers and employees shall give bond. The active officers and employees of any bank, before entering upon their duties, shall give bond to the bank* in a bonding company authorized to do business in North Carolina *in the amount to be required by the directors,* and to the satisfaction of the Corporation Commission. Such bonds shall be conditioned that such officer or employee shall faithfully discharge the duties imposed upon him by the directors, by-laws or by the law of the land, and that

such bonding company shall hold harmless the bank in which the officer or employee is employed, against any loss to said bank caused by said officer's or employee's unfaithfulness or negligence. The Corporation Commission or directors of such bank, may require an increase of the amount of such bond whenever they may deem it necessary. *If injured by the breach of any bond given hereunder, the bank so injured may put the same in suit and recover such damages as it may have sustained.*" (Italics ours.)

This act was amended by chapter 18, Extra Session, 1921, as follows: "That section sixty-one of chapter four of Public Laws of one thousand nine hundred and twenty-one, be amended by striking out all after the word 'directors,' line five, down to and including the word 'negligence,' in line eleven, and inserting in lieu thereof the following: 'in such form as may be prescribed or approved by the Corporation Commission.'" This act was ratified 15 December, 1921. Public Laws of 1927, chapter 47, section 11, is as follows: "That section sixty-one, chapter four, Public Laws of one thousand nine hundred and twenty-one, as amended, being section two hundred and twenty-one (m), Consolidated Statutes, be and the same is hereby amended to read as follows: *'Officers and employees shall give bond. The active officers and employees of any bank before entering upon their duties shall give bond to the bank* in a bonding company, authorized to do business in North Carolina, *in the amount required by the directors* and upon such form as may be approved by the Corporation Commission, same to be paid by bank. Such bond shall be conditioned that such officer or employee shall faithfully discharge all the duties imposed upon him by the directors, by the by-laws of the bank, or by the law of the land, and such duties as may be incident thereto, and such bond shall provide that such bonding company shall hold harmless the bank in which the officer or employee is employed against any loss to said bank caused by said officers' or employees' violation of any duty so imposed. The Corporation Commission or directors of such bank may require an increase of the amount of such bond whenever they may deem it necessary. *If injured by the breach of any bond given hereunder, the bank so injured may put the same in suit and recover such damages as it may have sustained and the provisions of this section shall be considered a part of the provision of the bond, whether included or not.'*" (Italics ours.)

N. C. Code, 1931 (Michie), section 221(m), is as follows: *"Officers and employees shall give bond.—The active officers and employees of any bank before entering upon their duties shall give bond to the bank* in a bonding company authorized to do business in North Carolina, *in the amount required by the directors* and upon such form as may be approved by the Commissioner of Banks, the premium for same to be

paid by the bank. The Commissioner of Banks or directors of such bank may require an increase of the amount of such bond whenever they may deem it necessary. *If injured by the breach of any bond given hereunder, the bank so injured may put the same in suit and recover such damages as it may have sustained."* (Italics ours.)

The above section is the same as passed by the General Assembly of 1929. Public Laws, 1929, chapter 72, section 2, with the exception that "Commissioner of Banks" is substituted for "Corporation Commission."

It is well settled that general laws of a State in force at time of execution and performance of a contract become a part thereof and enter into and form a part of it, as if they were referred to or incorporated in its terms. *Van Hoffman v. Quincy,* 4 Wallace 535 (550), 18 L. Ed., 403 (408); *Farmers and Merchants Bank of Monroe, North Carolina, v. Federal Reserve Bank of Richmond, Va.,* 262 U. S., 649 (660); 67 L. Ed., 1157 (1164); *O'Kelly v. Williams,* 84 N. C., 281 (285); *Graves v. Howard,* 159 N. C., 594; *House v. Parker,* 181 N. C., 40 (42); *Ryan v. Reynolds,* 190 N. C., 563 (565); *Hughes v. Lassiter,* 193 N. C., 651 (657); *Monger v. Lutterloh,* 195 N. C., 274 (279); *Headen v. Insurance Co., ante,* 270 (272); *Steele v. Insurance Co.,* 196 N. C., 408 (411); Page on Contracts, 2d edition, section 2048; 6 R. C. L., "Contracts," section 243.

The statute, *supra,* Public Laws, 1921, chapter 4, section 61, says "officers and employees shall give bond. . . . Before entering upon their duties. . . . In the amount required by the directors." This provision stands mandatory in all the changes of the statutes bearing on the subject. In the agreed statement of facts, it is set forth that each year, the board of directors of the Bank of Summerfield, elected Howard Simpson as cashier for a term of one year. The bond was fixed for each year, at $10,000 and the premiums on the $10,000 bond paid to defendant National Surety Company each year. In the case of public officers, not requiring bond in accordance with the statute, we said in *Moffitt v. Davis,* 205 N. C., 565 (570): "Public officials entrusted in so important a matter as this mandatory statute, we find from the weight of authority, are held individually liable to any one injured by their wilful failure or neglect of duty. To hold otherwise would put a premium on inefficiency and neglect." The bank directors were careful to comply with the statute and elected the cashier each year and required a $10,000 bond and the premium each year was paid on same.

It may be noted that in the "rider," it is recited "whereas the employer has been carrying a fidelity *bond or bonds* as follows: Bond No. 1531757, Howard Simpson, cashier, Bank of Summerfield, amount $10,000, dated 22 July, 1920, and whereas said *bond or bonds* have been

canceled, allowed to expire or have terminated," etc. This language indicates that each renewal was an independent contract. The Surety Company seems to have put this construction on the transactions. Courts will generally adopt the party's construction of the contract. *S. v. Bank,* 193 N. C., 524 (527); *Pick v. Hotel Co.,* 197 N. C., 110 (113).

We think the statutes entered into and formed part of the bond. The first $10,000 bond was signed 22 July, 1920, and was for one year. Before the year expired, the statute, *supra,* was passed, which the Surety Company was bound to take notice of. The General Assembly required of the officer such as a cashier, to give bond in the amount to be required by the directors, this provision at once entered into and formed part of the bond. But, it is contended by defendant that the rider of the contract to the bond of 27 April, 1929, had this in it: "Should a loss occur which is covered partly by a superseded bond and partly by the superseding bond, the amount recoverable from the company shall not exceed that which would have been recoverable under the terms of the superseded bond, plus the amount recoverable under the terms of the superseding bond for the period not covered by the bond superseded, provided always that the liability of the company will not be cumulative or exceed the largest single amount applicable to the employee causing the loss as fixed by either the superseded or the superseding bond."

We do not think the Surety Company could, by contract, destroy the beneficent provisions of the statutes. In *Brick Co. v. Gentry,* 191 N. C., 636 (640), it is said: "It was held in *Ingold's case (Ingold v. Hickory,* 178 N. C., 614), and rightly so, we think, that where a bond was given in compliance with the requirements of the statute, the surety might not, in such case, restrict its liability to suit contrary to the statutory provision, for this would be to uphold a stipulation directly opposed to the public policy of the State, and thus enable the parties, by private agreement, to set the statute at naught in direct violation of its terms. And here, if it did not clearly appear, from the terms of the bond, that it was not given in view of the requirements of the statute for the protection of the plaintiffs and to insure the faithful performance of the contract as it relates to them, we should be disposed to hold the stipulation, restricting the surety's liability to suit, void as being contrary to the public policy of the State as expressed in the statute."

Taking all the facts agreed to and the acts of the General Assembly referred to, we think that each and every renewal and the payment of the premium on same constituted a separate, distinct and independent contract. The Surety Company could not, contrary to the statute, make the provision in the rider, it received the premium each year on a

$10,000 bond "that the liability of the company will not be cumulative or exceed the largest single amount applicable to the employee causing the loss as fixed by either the superseded or the superseding bond." On the other attitudes of the case, the decisions are woefully in conflict. We desire to set forth what was said in *Ætna Casualty & Surety Co. v. Commercial State Bank of Rantoul, Ill.,* 13 Fed. (2d Series), 474 (475-6) : "Contracts of insurance guaranteeing honesty and fidelity are made for the purpose of furnishing, for an adequate compensation, indemnity to the insured, and should therefore be liberally construed to accomplish the purpose for which they are made." Citing numerous authorities. . . . "Here defendant paid an annual premium for insurance. Under plaintiff's theory, if there were a loss of $10,000, the first year, not discovered until the end of the three years' period, then, though defendant had paid premiums for the second and third years, it would have no protection for those years, no insurance, for the reason that the penalty of the bond would be completely exhausted by the first year's losses and nothing would remain to cover losses in the second and third years. In such case, the second and third years' premiums would be paid by defendant for nothing whatever. No sane man would say that this was the intention of defendant, and the court is most loathe to believe that it was the intent of plaintiff, a widely known insurance company, dependent upon the good will and esteem of the public and its customers for its commercial welfare, so to frame its contract of indemnity as to extract premiums from the insured without giving anything in return. Brief indeed would be its life of business prosperity and public esteem, were it known that it would be guilty of such a game of 'heads I win, tails you lose.' Rather than impute to it such an abhorrent suggestion of lack of commercial integrity and fair dealing, the court prefers to find as he believes the facts clearly indicate, that each year's premium was to buy one year's insurance of $10,000, but that the three years' premium bought insurance of only $3,333⅓, per year." *U. S. Fidelity & Guaranty Co. of Baltimore v. Crown Cork & Seal Co. of Baltimore City,* 125 Atlantic Reporter, p. 818 (820).

The case of *Jacksonville v. Bryant,* 196 N. C., 721, is easily distinguished from the present case. In that case, there was no ambiguity. The language of the contract was clear and explicit. For the reasons given, the judgment of the court below is

Affirmed.

SCHENCK, J., took no part in the consideration or decision of this case.