TOWN OF SCOTLAND NECK v. WESTERN SURETY COMPANY

No. 796SC504

(Filed 15 April 1980)

1. **Principal and Surety § 1— action on town clerk's bond—testimony as to term of office**

   Testimony as to the term of office of a town clerk was competent in an action on the clerk's bond to show that the payment of an annual premium for the bond was for the purpose of paying for a bond covering an annual term.

2. **Principal and Surety § 5— bond of town clerk—annual premium payment—separate bond for each year—liability for amount embezzled in each year**

   Where a town clerk was reappointed annually by the town commissioners, and statutes required the clerk to be bonded as an employee handling money and authorized the commissioners to set the term of office of the clerk and to vary the penal amount of the bond, the payment of an annual premium for the bond in a penal sum of $20,000 converted the bond into a new and separate bond for each year, and the surety on the bond was liable for the amount embezzled by the clerk in each year the bond was in effect up to the penal sum of $20,000 rather than for only the total sum of $20,000 for all sums embezzled by the clerk during all the years the bond was in effect.

3. **Principal and Surety § 1.1— surety on town clerk's bond—payment of restitution by clerk—extinguishment of portion of surety's liability**

   Where a town clerk was given a suspended sentence in a criminal action on the condition that he make restitution to the town for amounts he embezzled by paying $15,000 cash, placing $10,000 cash in escrow, giving a $15,000 note secured by a home mortgage, and giving a $22,000 unsecured note, the liability of the surety on the clerk's bond was extinguished only to the extent of the $15,000 cash paid by the clerk to the town, since there has been no final payment of the remainder of the obligation and the possible liability of the surety for such remainder has not been extinguished.

   Judge PARKER dissenting.

APPEAL by plaintiff from *Peel, Judge.* Judgment entered 1 February 1979 in Superior Court, HALIFAX County. Heard in the Court of Appeals 9 January 1980.

James Elisha Boyd, Jr. was appointed Town Clerk for the Town of Scotland Neck for a term beginning 10 September 1964 and served thereafter until 2 September 1977. On 31 August 1971, Boyd and Western Surety Company entered into an official bond as principal and surety, respectively, in favor of the Town of Scotland Neck, which provided *inter alia,*

THE CONDITION OF THE ABOVE OBLIGATION IS SUCH, That whereas, the said Principal has been appointed to the office of Town Clerk for the term beginning the 10th day of September, 1966, and the term being continuous. . . .

NOW, THEREFORE, if the said Principal shall in all things faithfully perform the duties of his office and shall honestly account for all moneys and effects that may come into his hands in his official capacity during the said term, then this obligation to be void, otherwise to remain in full force and effect.

This bond is executed by the Surety upon the following express conditions, which shall be conditions precedent to the right of recovery hereunder:

\*　　\*　　\*　　\*　　\*　　\*

SECOND: This bond may be canceled by the Surety as to future liability by giving written notice, by Certified Mail, addressed to each, the Principal and the Obligee at Scotland Neck, N. C., and thirty (30) days after the mailing of said notices by Certified Mail, this bond shall be canceled and null and void as to any liability thereafter arising, the Surety remaining liable, however, subject to all the terms and conditions of this bond for any and all acts covered by this bond up to the date of such cancelation.

On 2 September 1977, Boyd confessed to the mayor of the town that he had misappropriated town funds and resigned. Boyd testified that he had embezzled a total of $70,287.10 and that the misappropriation should be charged after 1 July 1973, as follows:

| | |
|---|---|
| November 27, 1973 | $ 9,384.30 |
| December 4, 1973 | 3,927.74 |
| February 26, 1974 | 357.44 |
| July 24, 1975 | 15,000.00 |
| May 21, 1976 | 10,000.00 |
| July 14, 1976 | 1,641.99 |
| March 31, 1977 | 5,877.32 |
| July 15, 1977 | 7,000.00 |
| July 15, 1977 | 611.30 |
| July 15, 1977 | 2,763.80 |

| July 29, 1977 | $ 2,366.27 |
| August 7, 1977 | 50.24 |
| August 12, 1977 | 2,141.51 |
| August 16, 1977 | 2,320.23 |

The Western Surety Company tendered the Town of Scotland Neck the sum of $20,000 as payment in full of all obligations arising under the bond. The sum was refused, and suit was entered by the Town of Scotland Neck against Western Surety Company for $67,719.68. Boyd pled guilty to embezzlement, and sentence was suspended under an agreement with the court for repayment which included the following:

(1) Payment of $15,000 in cash;

(2) $10,000 placed in escrow by Boyd's wife for his benefit;

(3) $15,000 note secured by mortgage on home;

(4) $22,112.77 secured by open note.

The two notes and $10,000 are being held in escrow pending the decision in this case.

At the close of the plaintiff's evidence, the defendant tendered $20,000 and moved for directed verdict. The court granted the defendant's motion. Plaintiff appealed.

*Josey, McCoy & Hanudel, by C. Kitchin Josey, for plaintiff appellant.*

*Battle, Winslow, Scott & Wiley, by Robert L. Spencer, for defendant appellee.*

HILL, Judge.

The plaintiff contends the court committed prejudicial error by failing to allow testimony before the jury by plaintiff's witnesses concerning the term of office of the town clerk of Scotland Neck who was bonded by defendant, and thereafter allowing the defendant's motion for a directed verdict.

By stipulation of the parties, it was agreed that an annual premium was paid on the bond from 1971 through 1977, and that the defendant was promptly and properly notified of the loss. The plaintiff tendered Boyd, who would have testified that he was ap-

pointed as town clerk for a yearly term, and that no other person served as clerk from 1964 until the fall of 1977. However, such testimony was excluded by the trial judge. Likewise, the trial court excluded testimony of the present town clerk who would have testified that he was custodian of the town minute books; that he had gone through them and found the following records concerning the appointment of James Boyd as town clerk:

(a) That James E. Boyd, Jr. be sworn in as the new clerk effective September 11, 1964.

(b) That Town Clerk be appointed Town Treasurer on August 17, 1966.

(c) For the years 1965, 1967, 1968, 1969, 1970, and 1971 — no record.

(d) That Clerk James E. Boyd, Jr. be appointed Tax Collector for one year, from July 1, 1972 through June 30, 1973.

(e) That Clerk James E. Boyd, Jr. be retained for the year 1973-74, and be appointed budget officer.

(f) That James E. Boyd, Jr. be appointed tax collector and town clerk for the fiscal year 1974-75.

(g) That James E. Boyd, Jr. be appointed town clerk and tax collector the next fiscal year (1975-76). (Meeting held 6 June 1975).

(h) That James E. Boyd, Jr. be appointed tax collector and finance officer for the year 1976-77.

(i) That James E. Boyd, Jr. be appointed clerk and tax collector for 1977-78.

[1] We must face the question of whether the actual term (or terms) of the office of clerk as principal on the bond is relevant. The plaintiff contends such evidence is relevant, in that it would show that payment of the annual premium was for the purpose of paying for a bond covering an annual term. The defendant contends that such evidence is irrelevant and should be excluded.

As a general rule, the liability of a surety on an official bond is to be determined by the language of the contract and cannot be enlarged beyond the scope of its definite terms. *Henry v. Wall,*

217 N.C. 365, 8 S.E. 2d 223 (1940). However, it is well settled that the statutory bond of a public officer must be written in accordance with the provisions of the applicable statute, *Washington v. Trust Co.*, 205 N.C. 382, 171 S.E. 438 (1933); and ". . . that general laws of a State in force at [the] time of execution and performance of a contract become a part thereof . . . ." *Hood, Comr. of Banks v. Simpson*, 206 N.C. 748, 757, 175 S.E. 193 (1934).

Recognizing that the duties of clerks to municipal corporations and the services rendered by the town to its citizens and the complexity of its government vary from town to town, our legislature as far back as 1917 provided:

> C.S. § 2826. *City Clerk elected; powers and duties.* The governing body shall, by a majority vote, elect a city clerk to hold office for a term of two years and until his successor is elected and qualified. He shall have such powers and perform such duties as the governing body may from time to time prescribe in addition to such duties as may be prescribed by law. He shall keep the records of the meetings. The person holding the office of the city clerk at the time when any of the plans set forth in this act shall be adopted by such city shall continue to hold office for the term for which he was elected, and until his successor is elected and qualified.

This section was expanded by G.S. 160-273.

Currently, G.S. 160A-171 provides:

> There shall be a city clerk who shall give notice of meetings of the council, keep a journal of the proceedings of the council, and be the custodian of all city records, and shall perform any other duties that may be required by law or the council.

Recognizing further the need to protect the public from wrongful acts of public officials and employees, the legislature in 1917 enacted the following statute:

> C.S. § 2828. *Bonds required.* Every official, employee, or agent of any city who handles or has custody of more than one hundred dollars of such city's funds at any time shall, before assuming his duties as such, be required to enter into bond with good sureties, in an amount sufficient to protect

such city, payable to such city, and conditioned upon the faithful performance of his duties, and a true accounting for all of the funds of the city which may come into his hands, custody or control, which bond shall be approved by the mayor and board of aldermen or other governing body and deposited with the city.

This statute was re-codified in 1943 as G.S. 160-277. In 1971 the section was renumbered as G.S. 159-29, and in 1975 the limits of the bond were raised to $250,000. Previous amendments provided the bond premium be paid by the municipal authority. Hence, it is apparent that since 1917, our statutes have continuously required officials such as Boyd to be bonded as an employee of the town handling money, even though no bond is required to cover wrongdoing in his clerical duties.

It is well recognized that a municipality is a political subdivision of the state. Its ordinances are laws within its jurisdiction, and those living therein or doing business therein are presumed to know such laws and are bound thereby.

"This Court has consistently held that our courts of general jurisdiction and the Supreme Court will not take judicial notice of a municipal ordinance." (Citations omitted.) *Surplus Co. v. Pleasants*, 263 N.C. 587, 591, 139 S.E. 2d 892 (1965). Although there is no record of any local ordinance requiring Boyd to be bonded, nevertheless, it is of no consequence. A review of the offices to which Boyd was appointed indicates not only that he served as town clerk, but also upon different occasions as tax collector, finance officer and town treasurer. Furthermore, G.S. 160A-171 provides that the clerk shall perform such other duties as may be required by law or the council. It is clear from the offices Boyd held that he was required to be bonded, and also that he had many opportunities to embezzle large amounts of town money.

By annually appointing Boyd to the position of clerk and tax collector, or finance officer, or treasurer, the governing body of the town acknowledged that the term of office expired annually. Boyd was not holding over. His term was not continuous. Otherwise, there would have been no need to go through the formalities of such reappointment. The clerk under the law in effect when the bond was initially written (1971) served a term of "two

years and until a successor [was] qualified and elected." But the Home Rule Bill, G.S. 160A, which became effective 1 January 1972, granted town commissioners the right to elect clerks to serve at the pleasure of the board, and it is evident that the town commissioners appointed Boyd to serve *annual terms* after 1 January 1972. Evidence of Boyd's term of office and the position held were relevant and should have been admitted.

[2] Having established that the terms of office for Boyd were severable and successive, we now address the issue of whether a separate obligation was created under the bond with each new appointment and upon payment of the annual premium. We hold there was.

If the defendant had written a new bond with each reappointment, the bond so written certainly would have been cumulative; and the defendant would have been liable to the limits of the bond for defalcations occurring during the terms of each respective bond. *See generally, Fidelity Co. v. Fleming*, 132 N.C. 332, 43 S.E. 899 (1903); *Pickens v. Miller*, 83 N.C. 543 (1880); *Hughes v. Boone*, 81 N.C. 204 (1878).

In the case of *Lee v. Martin*, 186 N.C. 127 (1923), *reh. granted* 188 N.C. 119 (1924), the defendant gave bond as clerk of court and subsequently was elected to another four-year term. No new bond was written for this additional four-year term by the surety, but premiums on the bond were continually paid into the second term, when the clerk was forced to resign because of misappropriation of funds. The Supreme Court held the surety liable for the face amount of the policy for each term, based upon the surety's written acknowledgment that the bond had been renewed and was in force at the commencement of the second term, and its acceptance of the premium therefor.

The case of *Hood, Comr. of Banks v. Simpson, supra*, is remarkably similar to the case before us and is controlling. In that case the cashier of a bank was elected annually by the bank's board of directors and required to give bond in accordance with the by-laws. The cashier was reelected annually and required to give bond, but the penal sum was not altered. Upon taking office, the cashier gave the required bond, the period of the bond being indeterminate, and each year the bond was renewed. The cashier embezzled $20,000. A unanimous Court stated at page 753-4:

Town of Scotland Neck v. Surety Co.

The question involved: When a bond which guarantees the fidelity of a bank cashier and guarantees the bank against loss by reason of embezzlement, etc., of said cashier, is executed for an indefinite term and thereafter is kept in force by the payment of annual premiums, does the fact that said cashier was elected at the time said bond was executed for a term of one year and was thereafter reelected each year for a like term, and was required at each reelection to give bond, all of which was expressly directed by the by-laws of said bank and in conformity with the statutes requiring the officer to give bond, constitute said bond one continuous transaction or is each and every renewal thereof a separate and distinct bond? *We think under the facts and circumstances of this case, that each and every renewal thereof is a separate and distinct bond or independent contract.* (Emphasis added.)

In explaining the reason for their decision, the Court stated at page 759 that,

We desire to set forth what was said in *AETNA CASUALTY & SURETY CO. v. COMMERCIAL STATE BANK OF RANTOUL, ILL.,* 13 Fed (2d Series), 474 (475-6): 'Contracts of insurance guaranteeing honesty and fidelity are made for the purpose of furnishing, for an adequate compensation, indemnity to the insured, and should therefore be liberally construed. . . . Here defendant paid an annual premium for insurance. Under plaintiff's theory, if there were a loss of $10,000, the first year, not discovered until the end of the three years' period, then, though defendant had paid premiums for the second and third years, it would have no protection for those years, no insurance, for the reason that the penalty of the bond would be completely exhausted by the first year's losses and nothing would remain to cover losses in the second and third years. In such case, the second and third years' premiums would be paid by defendant for nothing whatever. No sane man would say that this was the intention of defendant, and the court is most loathe to believe that it was the intent of plaintiff, a widely known insurance company, dependent upon the good will and esteem of the public and its customers for its commercial welfare, so to frame its contract of indemnity as to extract premiums from the insured without giving anything in return. Brief indeed would be its life of business

prosperity and public esteem, were it known that it would be guilty of such a game of 'heads I win, tails you lose.'

The case of *United States Fidelity & Guaranty Company v. Crown Cork and Seal Co.*, 145 Md. 513, 125 A. 818 (1924), although not on point with the type of bond *sub judice*, addresses the extent of liability on a bond during different periods. In *U.S.F.&G.*, *supra*, the policy provided that the insurer does not assume liability for any default or defaults in the aggregate exceeding the amount of its suretyship as determined by the original obligation of suretyship. The employee was originally covered in the sum of $20,000, which amount was changed from time to time as provided in the policy. Prior to 1 March 1922, coverage totaled $25,000. After 1 March 1922, coverage was reduced to $10,000. On 14 December 1922, it was discovered that the employee had embezzled $13,079.82 between 4 May 1921 and 1 March 1922; and $14,459.47 between 1 March 1922 and 14 December 1922. The insurer paid the $13,979.82 and denied liability as to the $14,459.47.

The annual notice of premium from USF&G to the insured contained the following language: "[Insurer] does not assume liability during any year or years, or for any default or defaults in the aggregate exceeding the amount of its suretyship as determined by the original obligation of suretyship." The insurer contended there was but one bond, originally in the sum of $25,000, and subsequently reduced to $10,000; and that it had paid its obligations arising out of defalcations while the $25,000 coverage was in effect.

The Maryland Court held that when losses occurred in separate periods, USF&G would be liable up to the amount in force in each period respectively. The premium was paid annually. At the end of any year the insured could have terminated the current contract of insurance and could have procured a new bond from the insurer. In that event it could not well be said that the insurer would not have been liable on each bond for losses during each period respectively. To hold that no further liability existed after payment of $13,079.82 to cover losses incurred prior to 1 March 1922, when the amount of the bond was $25,000 and to hold that no liability existed for losses occurring after 1 March 1922, when the bond was $10,000, would be to hold that the insured was paying for what it did not receive. A single premium, buying a

$25,000 policy had been paid. The Maryland Court held that such construction as contended by the insurer would be forced, unsubstantial, and unreasonable, for if the insured believed that under the policy he was receiving no protection for losses occurring after 1 March 1922, it is unlikely it would have continued to pay the same premiums it had paid when it did receive such protection. Nor can it be assumed that the insurer so understood it because it must have known that it could not readily sell insurance on such terms.

It is common sense to apply such reasoning to the case before us. This case is one of first impression covering the exact facts in question, and we are aware of the decisions in other jurisdictions which may reach a different result under similar circumstances. *See United States v. American Surety Co. of New York*, 172 F. 2d 135 (2d Cir. 1949), 7 A.L.R. 2d 940, *cert. denied* 337 U.S. 930 (1949), and annotations covering each side of the problem. Nevertheless, we hold that acceptance of the equal annual premiums by the defendant, together with Boyd's annual reappointments and the statutory requirement that he be bonded, acts as a renewal of the bond by the parties and estops defendant from denying coverage on an annual term basis. To hold otherwise would be to hold that Western Surety, "One of America's Oldest Bonding Companies," would be guilty of framing its contract of indemnity so as to ". . . extract premiums . . . without giving anything in return." *Simpson, supra*, at p. 759. We make the finding, fully cognizant of *Indemnity Co. v. Hood*, 226 N.C. 706, 40 S.E. 2d 198 (1946). We believe the facts in that case are not so distinguishable from the facts in *Simpson* and believe further that *Simpson* is the better reasoned opinion of the two and governs the result in the immediate case. It should be noted that in *Simpson*, Chapter 4, § 61 of the Public Laws of 1921, required the bank clerk to be bonded and enabled the board of directors to vary annually the amount of indemnity the bond would provide. Similarly, in our case, G.S. 159-29(a) requiring certain town officials to be bonded, coupled with G.S. 105-349 and G.S. 105-350 dealing with tax collection, gives the town commissioners the power to vary the extent of coverage the bond indemnifying the town clerk would provide. The Court in *Simpson* found the requirement that the clerk be bonded and the ability to vary the coverage each year important in reaching the conclusion that

there were several distinct contracts. We find the ability of the commissioners to demand and vary coverage in our case to be analagous and to mandate the result we have reached.

In the face of the General Statutes and the actions taken by the governing board of the town, we conclude the acceptance of premiums constituted part of a bilateral action and created several contracts — not one continuing agreement with one maximum sum to be recovered.

[3] Defendant further contends that the Town of Scotland Neck had made an agreement with Boyd whereby Boyd had agreed to make restitution to the town in the following amounts:

(a) $15,000 cash paid on December 14, 1977;

(b) $10,000 cash placed in escrow;

(c) $15,000 note secured by mortgage on Boyd home;

(d) $22,000 unsecured demand note.

The above amounts cover sums misappropriated by Boyd during the six-year statutory period. (G.S. 1-50) Except for the $15,000 paid in cash by Boyd, the assets are being held in escrow until the amount owed to the town by the bonding company is resolved and the final costs of auditing fees determined. Boyd was given a suspended sentence in the criminal action related to this cause, with the suspension being conditioned upon his making the payments set out above. Defendant contends such agreement extinguishes its liability to the extent of $62,000.

"The liability of the surety is extinguished by a payment of the obligation by the principal, which makes the injured party whole." 67 C.J.S., Officers § 294, p. 838.

It is well settled that if the creditor enters into any valid contract with the principal debtor, without the assent of the surety, by which the rights or liabilities of the surety are injuriously affected, such contract discharges the surety. *Deal v. Cochran*, 66 N.C. 269, 270 (1859).

Certainly, $15,000 of the total amount misappropriated by Boyd must be deducted from the amount due under the bond. However, the fact that the other payments are being held in escrow means that there has been no final payment of the obliga-

tion and that the possible liability of the surety has not been extinguished.

For the reasons set out above, the judgment entered by the trial court is vacated, and the plaintiff is granted a new trial.

New trial.

Chief Judge MORRIS concurs.

Judge PARKER dissents.

Judge PARKER dissenting.

I do not find the opinion of Justice Clarkson in *Hood, Com'r of Banks, v. Simpson*, 206 N.C. 748, 175 S.E. 193 (1934) either as controlling or so persuasive as do my colleagues. Nor do I agree that Justice Clarkson's views represent "the better reasoned opinion" when compared with the opinion of our Supreme Court written twelve years later by Justice (later Chief Justice) Barnhill in *Indemnity Co. v. Hood*, 226 N.C. 706, 40 S.E. 2d 198 (1946).

The majority concedes that "[t]he liability of a surety on an official bond is to be determined by the language of the contract and cannot be enlarged beyond the scope of its definite terms." With that view I completely agree. My disagreement arises only when the majority proceeds to enlarge the liability of the surety beyond the scope of the definite terms of its agreement.

The contract with which we are here concerned is embodied in a single written instrument, the bond dated 31 August 1971 in the penal sum of $20,000.00. That bond recites that the principal, Boyd, had been appointed to the office of town clerk "for the term beginning the 10th day of September, 1966, *and being continuous*." (Emphasis added.) The surety's obligation under the bond is conditioned upon the faithful performance by the principal of the duties of his office and the honest accounting by him "for all moneys and effects that may come into his hands in his official capacity *during the said term*." (Emphasis added.) No other instrument was signed by the defendant Surety Company.

Despite the clear language of the one instrument which defendant did sign, in which the office of the principal is referred

to as "being continuous," the majority converts that instrument into seven separate contracts, each to apply anew to each of the years 1971 through 1977. It achieves this result by relying in part on the theory that payment of an annual premium converted the bond into a new bond each year and in part on the theory that statutes, which the majority finds applicable, must somehow be read in conjunction with the bond so as to transform it into seven separate contracts. I find neither theory persuasive.

Payment of annual premiums did not suffice to convert a single bond into a new contract each year in *Indemnity Co. v. Hood, supra,* and I see no sound reason why such payments should accomplish that result in the present case in which the single bond signed by defendant covers the principal's faithful performance during a term expressed as "being continuous."

As to the statutes, the statute relating to the term of office of a town clerk which was in effect on 31 August 1971, the date of the bond here in question, was G.S. 160-273. That statute provided that "[t]he governing body [of a municipality] shall, by a majority vote, elect a city clerk to hold office for the term of two years *and until his successor is elected and qualified.*" (Emphasis added.) It is in the light of that statute that the bond here in question, which refers to the principal's term of office as "being continuous," should be interpreted. Relevant also is the undisputed fact that on the date the bond was executed the principal in this case had continuously occupied the office of town clerk since 10 September 1964 and his last appointment to that office had been made at a meeting of the town commissioners held on 17 August 1966. Thus, on the date the bond was executed the principal had occupied the position of town clerk continuously for a period of more than seven years and his latest appointment to that position had been made more than five years previously. Under these circumstances the reference in the bond to the principal's term of office as "being continuous" accurately reflected the actual situation which then existed. The parties contracted in the light of that situation, and I see no sound reason why their contract should not be enforced as written.

I recognize that G.S. 160-273 was repealed effective 1 January 1972 and that the Act of the General Assembly by which this was accomplished, Ch. 698 of the 1971 Session Laws, had

already been enacted when the bond here in question was executed on 31 August 1971. However, even if it be conceded that the parties may have executed the bond in contemplation of the new statute which was to come into effect four months later, plaintiff's position is no stronger. The new statute, G.S. 160A-171, simply provides that "[t]here shall be a city clerk," but it does not specify any term of office for that position. The majority construes the statute as authorizing the governing body of the town to fix the term of office of the clerk, and it points to the minutes of the Town Commissioners of the Town of Scotland Neck showing successive annual reappointments of defendant's principal, Boyd, as establishing that the governing body of the town had in fact and in legal effect fixed the term of office of the town clerk as a one-year period. The majority then reasons from this that the bond which defendant signed, and which referred to the term of office as "being continuous," had been amended by the unilateral action of the town governing body so as to become in legal effect no longer one bond but a series of bonds, each to cover up to its full penal sum for a new and different term of office. If the Town of Scotland Neck could achieve this result through the unilateral action of its governing board without the consent (and even, so far as this record discloses, without the knowledge) of the defendant Surety Company, then I perceive no reason why the Town Commissioners could not also have, through the simple expedient of making monthly rather than yearly appointments, imposed upon defendant Surety Company without its knowledge or consent separate and successive obligations up to the full amount of the bond for every month of every year. I do not believe that such a result is compatible with sound principles of contract law.

Certainly decision of every case of this type depends upon the language used in the particular bond involved and on the circumstances surrounding its execution. *See* Annot., 7 A.L.R. 2d 946 (1949). In this case, the defendant's obligation to plaintiff is based on a single written contract. It is controlled by the clear language of that contract. I do not agree with the majority's view that the law has given the plaintiff, as the other party to that contract, such carte blanche authority to change its terms. I agree with the trial court that the extent of defendant's obligation on the bond is exactly what it says, $20,000.00, plus interest. Accordingly, I vote to affirm.