STATE EX REL. R. H. LEE ET ALS. v. E. E. MARTIN AND NEW AMSTER-
DAM COMPANY.

(Filed 26 September, 1923.)

1. Clerks of Court—Principal and Surety—Officers—Official Bonds.

In an action against a corporation, surety on the bond of a defaulted clerk of the Superior Court with whom certain moneys had been deposited for plaintiff and lost through the clerk's defalcation, it appeared that the defendant surety company had given the bond for the first term of the defaulter, and resisted payment upon his succeeding term on the ground that the clerk had then not been properly inducted into office for his failure to take the oath of office: *Held*, the written acknowledgment of the defendant surety company that the bond had then been renewed and was in force from the commencement of the second term of office, and its acceptance of the premiums therefor, estopped it to deny its liability thereon.

2. Same—Statutes.

*Held*, under the facts of this case, error for the trial judge to exclude liability of the surety upon the defendant's second bond, the statute giving the plaintiff the right to sue from time to time until the full penalty incurred under both of the bonds is recovered, limited solely by the amount of the bonds, etc., when incurred thereunder, though the incumbent may have held only under color of his office; and a judgment denying liability upon the ground that the incumbent was "a hold-over" from his preceding term, is reversible error. C. S., sec. 354.

**3. Same—Renewals—Acknowledgment—Cumulative Liability.**

Where the surety has renewed the bond of a clerk of the court upon his election to that office a second time, acknowledged its liability and received premiums thereon, its liability is cumulative for all defalcations thereunder, whether for the second term its principal was continuing to act *de facto* or *de jure.*

**4. Same—Oaths of Office—Evidence—Questions for Jury.**

Where the surety sued upon the bond of a defaulting clerk of the Superior Court, resists recovery as such, on the ground that the clerk had not been duly sworn and inducted into office the second and succeeding term, the best evidence is the oath filed in his office; but upon failure of this, parol evidence of the fact is admissible; and when in doubt, the issue should be submitted to the jury.

**5. Same—Estoppel of Principal.**

A clerk of the court or other official who has been elected to office for a second term and enters into the duties thereof, is estopped to deny the legality of his tenure; and the provisions of our Constitution requiring an oath. of office before entering into the duties thereof does not affect his eligibility thereto.

**6. Same—Estoppel of Surety.**

A surety on the bond required by public official is estopped to deny the facts stated in its obligation.

**7. Same—Limitation of Actions.**

The six-year statute of limitation (C. S., sec. 439) is applicable to an action against the surety on the bond of a defaulted clerk of the Superior Court.

**8. Same—Interest.**

Interest which, if added to the principal, would exceed the amount limited in the bond of a surety given for a defaulted clerk, is recoverable in an action by one who has thereby suffered loss.

**9. Same—Penalties—Statutes.**

The sureties on the official bond of a clerk of the Superior Court are liable, under the provisions of our statute, to those suffering loss through his default, for damages at the rate of 12 per cent per annum from the time of its unlawful detention until the lawful amount has been paid, which *is not affected by the consolidation of several separate actions* brought by like claimants thereunder.

APPEAL by plaintiffs from *Grady, J.,* at May Term, 1923, of PAMLICO. This action was originally brought by R. H. Lee to recover $1,172.14 from the defendant E. E. Martin, former clerk of the Superior Court of Pamlico County, and his surety and codefendant, the New Amsterdam Casualty Company. This fund was deposited in court, 20 May, 1917, by L. J. Upton & Co. for plaintiff Lee, awaiting the trial of his action against L. G. Upton & Co. After the case was disposed of in the Supreme Court (*Lee v. Upton,* 178 N. C., 198), plaintiff, on 20 October,

1919, demanded of the defendant Martin the payment of said fund, and was advised by said Martin that he would pay over the same in a few days.

The defendant Martin had been duly elected clerk of the Superior Court of Pamlico County at the general election in 1914, and on 8 December, 1914, was duly inducted into office. He was again reëlected in 1918 and duly inducted into office for a second term the first Monday in December, 1918, and held said office until his forced resignation, on 27 January, 1921. On his first induction into office he gave as surety on his official bond the New England Casualty Company of Boston. In November, 1916, his first surety, said New England Casualty Company, went out of the bonding business, and he gave another official bond in the sum of $5,000, with the New Amsterdam Casualty Company as surety, said bond being duly acknowledged and approved by the county commissioners.

The case of R. H. Lee v. E. E. Martin was tried at November (1922) Term of Pamlico, verdict and judgment being entered in favor of plaintiff for the full amount of his claim of $1,172.14. At the same term, in the case of Annie Haskins, by next friend, W. C. Aldridge, against the same defendants, there was a verdict and judgment against both these defendants in favor of said plaintiff for $215 for a small fund held by said Martin as receiver

*Calvert, J.,* presiding at said term of court, signed an order consolidating the said two cases of Lee and Haskins with all other cases against said clerk for defalcation, which order deferred the collection of the said two judgments in the Lee and Haskins cases until the decision of the other seven cases against said clerk, the total amount involved in the nine suits against these defendants amounting to approximately $9,000. These other suits were to recover sums put in the office of the defendant Martin at various times during the years 1918 and 1919, which the jury found that said Martin collected and misappropriated.

The court held, however, that the surety, the New Amsterdam Casualty Company, was only liable for $5,000, the penalty of Martin's bond for the term of office current when it was executed, December, 1916, and that there was no liability against the surety on the bond required for the second term, upon the ground that Martin did not take the oath of office in December, 1918, and, therefore, was not properly inducted into office for the term beginning on that date. There was evidence by the chairman and another member of the board of county commissioners that the defendant Martin took the oath of office and was properly inducted into office as clerk of the Superior Court of Pamlico on the first Monday in December, 1918. Martin himself was the only witness

to the contrary, and had just been sentenced for three years in the penitentiary for embezzlement. The court (*Grady, J.*) adjudged "that the defendant Martin was clerk of the Superior Court for the remainder of his term from 1 December, 1916, until the first Monday in December, 1918, and was clerk of the court as a hold-over from the former term, from the first Monday in December, 1918, until 27 December, 1920, with the defendant, New Amsterdam Casualty Company, as his surety in the penal sum of $5,000 on the bond, No. 28863, duplicate original of which was before the court, and the said $5,000 is the limit of all liability of the defendant, New Amsterdam Casualty Company, as surety of the said E. E. Martin on his office bond or bonds," and adjudged "that the relators recover of the defendant, New Amsterdam Casualty Company, as surety of the said E. E. Martin, the following amounts in full discharge of the defendant, New Amsterdam Casualty Company, of its liability on the official bond or bonds of the defendant E. E. Martin, except its liability for costs in this action, which shall be paid in addition to said $5,000, to wit": and thereupon adjudged a *pro rata* application of said $5,000 to all the relators in the nine judgments for defalcation as clerk, as adjudged by the several verdicts and judgments obtained therefor.

The judgment of the court was that the defendant E. E. Martin had continued in office as clerk of the Superior Court until February, 1921.

The plaintiff assigned as error in the judgment:

First, that the court erred in refusing to submit to the jury whether the defendant, New Amsterdam Casualty Company, was surety on the official bond of E. E. Martin until 27 January, 1921.

Second, that the court erred in holding that there was not sufficient evidence to go to the jury that the defendant Martin qualified and was inducted in the office for his second term, beginning December, 1918.

Third, that the court erred in holding that the liability of the defendant, New Amsterdam Casualty Company, as surety, is only $5,000.

Fourth, the court erred in holding that the said defendant Martin, as clerk, was a hold-over of said office without being duly inducted and qualified for a second term.

Fifth, the court erred in holding that $5,000 is the full limit of the defendant, New Amsterdam Casualty Company's liability as surety on the defendant Martin's official bond.

Sixth, the court erred in finding that the amounts prorated to the several relators mentioned in the judgment, especially as to the relators, R. H. Lee, Annie Haskins, by next friend, W. C. Aldridge; Pamlico County, and the Board of Education for Pamlico County, B. W. Best, administrator of the estate of Pauline Ebron and Jacob Long, Andrew

Neal and others, is a full discharge of the defendant, New Amsterdam Casualty Company, for liability on the official bond or bonds of the defendant Martin.

Seventh, the court erred in 'finding that the amount paid into court, referred to in said judgment, is in full of all liability of said surety, except costs.

Eighth, the court erred in holding that other relators, including the relators mentioned in this exception, are barred by said judgment of all right of action and claims against the defendant, New Amsterdam Casualty Company, on the official bond of said Martin.

Ninth, the court erred in signing the judgment as set out in the record.

*Z. V. Rawls for plaintiffs.*
*F. C. Brinson and Ward & Ward for defendant casualty company.*

CLARK, C. J.    Each and every one of the nine exceptions to the judgment should be sustained.    Exception 1.    C. S., 354 provides that the official bond of the clerk of the Superior Court shall not "become void upon the first recovery, or if judgment is given for the defendant, but may be put in suit and prosecuted from time to time until the whole penalty is recovered; and every such officer and the sureties on his official bond shall be liable to the person injured for the acts done by said officer by virtue and under color of his office."

The defendant bonding company filed in this proceeding its written admission that the bond for the second term was in full force and effect. This letter, written by Robert M. Golder, superintendent of the bonding company, 27 December, 1920, is as follows:

"Mr. Paul Woodard, Chairman, Board of County Commissioners, Bayboro, N. C.    Dear Sir: On 16 November, 1916, the New Amsterdam Casualty Company became surety on the bond of Edgar E. Martin as Clerk of the Superior Court, Pamlico County, North Carolina.    The bond was executed for the term beginning 1 December, 1916, and ending 1 December, 1918, or until Mr. Martin's successor was elected or appointed and qualified.    The above bond has been continued from year to year by the payment of an annual premium of $25.    The bond contains a clause whereby the surety may terminate its liability by giving thirty days notice in writing to the Board of County Commissioners of Pamlico County, North Carolina, and in accordance therewith, please consider this communication as our notice to terminate our liability, under Mr. Martin's bond, on and after 22 December, 1920."

The defendant, the said bonding company, had previously made the following admissions in writing:

"2 April, 1920. Messrs. McClenaghan, Griffith & Hayes, Raleigh, N. C. Gentlemen: *Re* bond of E. E. Martin, Clerk of Superior Court, Pamlico County. This bond appears to have been written, December, 1916, for four years, and we understand by your letter of 28 November, 1918, addressed to Mr. Martin, as follows, viz.: '*Re* bond 28863, self, $5,000, as Clerk Superior Court, Pamlico County. We have charged renewal premium of $25, due 18 December.' "

"2 August, 1920. Messrs. McClenaghan, Griffin & Hayes, Raleigh, N. C. Gentlemen: *Re* E. E. Martin, C. S. C., Pamlico County. Replying to your letter of the 24th ult., in reference to the above matter, beg to say that we wrote you on 2 April as follows: '*Re* bond of E. E. Martin, Clerk Superior Court, Pamlico County. This bond appears to have been written, December, 1916, for four years, and we understand by your letter of 28 November, addressed to Mr. Martin, as follows, viz.: "*Re* bond 28863, self, $5,000, as Clerk Superior Court, Pamlico County. We have charged renewal premium of $25 due 18 December." ' That the original bond is still in force and will be until the expiration of the second four-years term, beginning December, 1916. Is this correct?"

"Baltimore, Md., 10 August, 1920. *In re* bond No. 28863, Edgar E. Martin, Clerk of Superior Court, Pamlico County, N. C. McClenaghan, Griffin & Hayes, Raleigh, N. C. Gentlemen: We have your letter of 5 August with reference to the above. In reply will say that our records indicate that the above bond has been renewed until 1 December, 1920. Trusting this gives you the necessary information, we remain."

"Raleigh, N. C., 12 August, 1920. Mr. Z. V. Rawls, Attorney, Bayboro, N. C. *Re* bond 28863, Edgar E. Martin, due 1 December. Dear Sir: Reply to yours of the 2d inst. Enclosed you will find original letter of the 10th inst. from public official department of the bonding company, which reads: 'We have your letter of 5 August, with reference to the above. In reply, will say that our records indicate that the above bond has been *renewed* until 1 December, 1920. Trusting this gives you the necessary information.' With best wishes. Yours truly, C. T. McClenaghan, Raleigh, N. C."

The ruling of the court that the liability of the defendant bonding company was limited to $5,000 on its official bond of 16 November, 1916, was therefore erroneous upon the written admission of the defendant. The bond had been renewed on 1 December, 1920, and, therefore, there was accumulative liability for all defalcations as evidenced by the judgments on record not exceeding the amount of $5,000 on the first bond and of $5,000 additional on the second bond. 22 R. C. L., sec. 185, p. 503; *Whitehurst v. Hickey,* 3 Mart. N. S. (La.), 589; 15 Am. Dec.,

167, and notes; 82 Am. Dec., 764; 90 Am. St., 189. All official bonds, of course, should be recorded. However, the surety is estopped to deny the validity of the bond on the ground that it was not recorded. *U. S. v. Bradley,* 10 Peters, 343.

The authority of persons who sign a bond for a surety company can- not be questioned where the evidence establishes not only that the com- pany, with knowledge of the bond, did not repudiate their authority, but that it received the premium owing to it by reason of being the surety on such bond. *Eichorn v. New Orleans R. R.,* 114 La., 712; 3 Anno. Cas., 98.

If the defendant Martin had executed a new bond on 6 December, 1918, said bond would have been cumulative and would have been liable, not only for the defalcations occurring during that term, but for all that had accrued after the execution of the bond in December, 1916, and which defalcations were unpaid. The fact that the company received payment of the premiums on the bond as if executed on 6 December, 1918, rendered it liable, not merely as a continuance of the liability of the bond executed in December, 1916, said bond not having been dis- charged, but made it liable upon the acknowledgment thereby of the obligation of surety accruing for the defaults of the *de facto* clerk under his new term of office beginning 6 December, 1918. All the defalcations as appears by the tenor of the judgments in evidence accrued either during the first bond executed in 1916, or subsequent to the acknowledgment of indebtedness upon the second bond of December, 1918, said acknowledgment being evidenced by the written admissions of the casualty company as filed in the record, and by said casualty company's receipt of the premium for assuming said liability.

Exception 4 is to that part of the judgment holding said clerk, Mar- tin, liable only as a "hold-over" of said office without being "duly inducted and qualified for a second term." It appears in the record that Paul Woodard, chairman of the board of county commissioners, and W. R. Reel, another member of said board, both testified that Martin was duly sworn and inducted into office for a second term, be- ginning 1918. Of course, the best evidence of his induction into office for a second term would have been the oath of office filed in the office of clerk of the court and offered in evidence. It may well be that this oath could not be offered, because the defendant Martin may have destroyed it purposely to aid in protecting himself from liability; but that he was the *de facto* officer, acting as such and under a certified election, is suf- ficient to make the surety upon his bond responsible for his defalcations, and the written admission of the bonding company and its receipt of the premiums upon the bond are sufficient to fasten liability upon the bonding company for this second bond of December, 1918. Had there

been any doubt upon the matter, it would have been the duty of the judge to submit an issue whether the defendant Martin was actually inducted into office; but the bonding company admits the receipt of the fees for executing the bond, and its liability therefor for his official acts, and the fact that the clerk was a *de facto* officer, discharging the duties of the post, was not questioned.

The incumbent of an office, and performing the duties of the same, is estopped to deny the legality of his tenure. *S. v. Long,* 76 N. C., 254; *Lumber Co. v. Hutton,* 159 N. C., 445. It would be exceedingly dangerous and detrimental to the public interest if it were otherwise; and by reason of the failure of an officer occupying an official position like this, involving liabilities to infants and others for funds entrusted to his care, he could be released from all responsibilities by an inadvertence in failing to take an oath of office which he holds himself out to the public as legally occupying, or could evade all financial liability for his acts by the loss of the oath or the destruction of its record.

The Constitution of the State requires an oath of office before entering upon the discharge of its duties. But this does not affect eligibility of the officer. He must be eligible when elected. The oath is after his election and is simply his promise to be faithful to the government and to his office, which assurance is binding on his conscience. *Lee v. Dunn,* 73 N. C., 605. But the failure to take the oath does not release the incumbent of an office, whether merely *de facto* or *de jure,* from liability for his official acts.

Exception 8 is to the judgment excluding the other relators as barred from all right of action and claim against the bonding company upon the official bond of said Martin. This is in direct conflict with C. S., 439, which provides a period of six years for the commencement of an action against the official bond of a public officer.

The last paragraph of the judgment of *Calvert, J.,* consolidating the several cases at bar, does not impose any limitation upon the liability of the defendants. If the payment of premiums upon Martin's bond for the second term of office, beginning in December, 1918, had not been evidence of the execution of the bond, or at least admission of liability for his official acts during said term, even then the judgment denying the plaintiff's interest upon their judgments would have been erroneous.

When a cause of action on an official bond arises in favor of a third person he is entitled to recover interest. Although the penalty on the bond fixes the limit of the liability of the surety at the time the liability arises, yet if the principal or surety fails to discharge that liability when it matures, interest will be allowed on the amount from the time the liability accrues, even though this would make the aggregate of recovery in excess of the penalty of the bond. 22 R. C. L., 518, para-

graph 206; *Clispy v. Masten,* 150 Ala., 132; 124 Am. St., 64; *McMullen v. Bldg. Assn.,* 64 Kans., 298; 91 Am. St., 236; 56 R. L. A., 924.

The sureties on the bonds of public officers are estopped by their act of executing the bond to deny the facts recited therein. 22 R. C. L., 520; paragraph 211.

It is worthy of notice that a paragraph of defendant Martin's bond executed by the defendant bonding company in 1916, and which was in full force and effect until 22 December, 1920, and which is set out in full in the record, provides: "It is mutually understood and agreed between all parties hereto that if the surety shall so elect, this bond may be canceled by giving thirty days notice in writing to the said Board of County Commissioners of Pamlico County, N. C.; and this bond shall be deemed canceled at the expiration of said thirty days, the said surety remaining liable for all or any act or acts covered by this bond which may have been committed by the principal up to the date of such cancellation, under the terms, conditions and provisions of this liability thereunder, and, on surrender of the bond, refund the premium paid, less a *pro rata* part thereof for the time this bond shall have been in force."

The defendant surety company, having received premiums on this bond, by its own admissions, and having failed to notify the board of county commissioners, according to the terms of the said bond, until 22 December, 1920, of its election to cancel said bond, that the same would be canceled from thereafter, 22 January, 1921, is estopped from denying its liability for all the official acts of their principal and codefendant, Martin, until 22 December, 1920.

It is also clear that the plaintiff R. H. Lee, upon the face of the record, would be entitled to a modification of the judgment in his favor by adding 12 per cent interest upon the principal ($1,172.14) from October, 1919, to date of the demand; for C. S., 356, 357, provide that "When money is unlawfully detained by public officers, and the same is sued for in any manner whatever, the plaintiff is entitled to recover (on the bond), besides the sum detained, damage at the rate of 12 per centum per annum from the time of detention until payment. *Hannah v. Hyatt,* 170 N. C., 634." And the plaintiff Haskins is entitled to a modification in like manner on the judgment in her favor ($215) by computing 12 per cent interest thereon from 1 August, 1919; and the plaintiffs, Pamlico County and the Board of Education, are entitled to a modification of the judgment in their favor by calculating 12 per cent interest on the $1,040.95 principal thereof from April, 1922, the date of the summons.

In like manner the plaintiff B. W. Best is entitled to a modification of the judgment in his favor for $500 by adding 12 per cent interest

thereon from 15 February, 1923, the date of the judgment; and the plaintiff Andrew Neal, in his favor, for $51.54 by the allowance of 12 per cent interest from 15 February, 1923.

Likewise the plaintiffs in the other judgments are entitled to have the same modified, adding 12 per cent interest thereon, as follows: The plaintiff J. Y. Sawyer is entitled to recover $779.22, with 12 per cent interest thereon from 27 October, 1920; the relator, L. J. Upton & Co., should recover $754, with 12 per cent interest thereon from 15 November, 1919; the relators, Betty Mayo, Florence Mayo, and Emma Mayo, by their next friend, are entitled to recover $587.60, with 12 per cent interest thereon from 15 June, 1919; and the relator, Griffin, guardian, is entitled to recover on behalf of his wards $3,450, with 12 per cent interest on the $880 from 14 October, 1918, and on $1,440, with 12 per cent interest from 1 May, 1919, and on $1,150 thereof, with interest from 20 December, 1919.

The above sums are recoverable as aforesaid on the bond of November, 1916, and on the obligation assumed in December, 1918, when the bond was *renewed,* as stated by the bonding company in the above-written admissions, by the payment of premiums, though no physical bond may have been then executed by the said bonding company.

Upon the entire record, the judgment should be reversed and the judgment modified and entered as above stated.

Judgment for plaintiffs as modified.