TOWN OF SCOTLAND NECK v. WESTERN SURETY COMPANY

No. 11

(Filed 4 November 1980)

**Principal and Surety § 5– bond of town clerk – annual premiums paid – one continuous contract**

Renewals of a surety bond on plaintiff's town clerk through the payment of annual premiums should be construed with the original bond as one contract only, with the maximum liability fixed by the principal amount of the bond, since the bond in question contained no termination date; the outside cover of the bond contained the word "Expires" followed by a blank line on which the word "Indefinite" was written; in the body of the bond the beginning date was given and the words "being continuous" were inserted in lieu of an ending date; though the bond was entered into on 31 August 1971, it reached back to 10 September 1966, thus indicating a continuous contract which ignored successive terms of office; on its face the bond was not tied to any period for which the employee as principal might hold the office of town clerk; nothing tending to show the intention of the parties — except that annual premiums were paid — was introduced into evidence; the lack of evidence to the contrary in the subsequent treatment of the bond indicated that it was regarded by the parties as a single, continuous contract and not multiple contracts for each year a premium was paid or for each term of office to which the clerk was appointed; and though the statutes require town clerks to be bonded if they handle town money, the statutes do not require a new bond for each term of a town clerk.

Justice BROCK took no part in the consideration or decision of this case.

DEFENDANT appeals from decision of the Court of Appeals, 46 N.C. App. 124, 264 S.E. 2d 917 (1980), vacating a directed verdict in favor of defendant entered by *Peel, J.*, on 1 February 1979 in HALIFAX Superior Court.

This is a civil action by the Town of Scotland Neck to recover on the official bond of its employee James Elisha Boyd, Jr. (hereinafter Boyd) by reason of certain embezzlements committed by Boyd while serving as Town Clerk.

Boyd was appointed Town Clerk beginning 10 September 1964 and thereafter served in that capacity until 2 September 1977. On 31 August 1971, Boyd and Western Surety Company entered into an official bond as principal and surety, respectively, in favor of the Town of Scotland Neck as promisee or obligee. The face amount of the bond is $20,000. Other pertinent provisions of the bond read:

Town of Scotland Neck v. Surety Co.

"THE CONDITION OF THE ABOVE OBLIGA-
TION IS SUCH, That whereas, the said Principal has
been ⊠ appointed ☐ elected to the office of <u>Town
Clerk</u>, for the term beginning the <u>10th</u> day of <u>Septem-
ber</u>, 19<u>66</u>, and ~~ending~~ the <u>being continuous</u> day of
<u>              </u>, 19<u>      </u> .

NOW, THEREFORE, if the said Principal shall in
all things faithfully perform the duties of his office and
shall honestly account for all moneys and effects that
may come into his hands in his official capacity during
the said term, then this obligation to be void, otherwise
to remain in full force and effect.

This bond is executed by the Surety upon the fol-
lowing express conditions, which shall be conditions
precedent to the right of recovery hereunder:

\*    \*    \*    \*

SECOND: This bond may be canceled by the Sure-
ty as to future liability by giving written notice, by
Certified Mail, addressed to each, the Principal and the
Obligee at <u>Scotland Neck, N.C.</u>, and thirty (30) days
after the mailing of said notices by Certified Mail, this
bond shall be canceled and null and void as to any
liability thereafter arising, the Surety remaining li-
able, however, subject to all the terms and conditions
of this bond for any and all acts covered by this bond up
to the date of such cancelation."

Annual premiums were paid on the bond by the Town of Scot-
land Neck.

On 2 September 1977, Boyd resigned as Town Clerk and
confessed to the Mayor that he had misappropriated Town
funds on many occasions while in office. Boyd testified to
embezzlements as set out in the following table:

| | |
|---|---:|
| March 16, 1972 | $    459.06 |
| June 27, 1973 | 713.46 |
| June 29, 1973 | 122.58 |
| November 27, 1973 | 9,384.30 |
| December 4, 1973 | 3,927.74 |
| February 26, 1974 | 357.44 |
| July 24, 1975 | 15,000.00 |

Town of Scotland Neck v. Surety Co.

| | |
|---|---:|
| May 21, 1976 | 10,000.00 |
| July 14, 1976 | 1,641.99 |
| March 31, 1977 | 5,877.32 |
| July 15, 1977 | 7,000.00 |
| July 15, 1977 | 611.30 |
| July 15, 1977 | 2,763.80 |
| July 29, 1977 | 2,366.27 |
| August 7, 1977 | 50.24 |
| August 12, 1977 | 2,141.51 |
| August 16, 1977 | 2,320.23 |

The record reveals that Boyd had occupied the office of Town Clerk continuously from 10 September 1964 until he resigned on 2 September 1977. The trial court excluded evidence of the terms of office, duties added to the office and dates of reappointment found in the minutes of Town Board meetings.

At the close of plaintiff's evidence, defendant moved for a directed verdict on the ground that, taking plaintiff's evidence as true, it was not entitled to recover anything in excess of $20,000, which sum was tendered to plaintiff in open court. After hearing the parties, the court allowed defendant's motion for a directed verdict. The court signed a judgment which, in pertinent part, reads as follows:

"1. That the plaintiff have and recover of the defendant the sum of $20,000.00, plus interest in the amount of $100.00.

2. That the motion of the defendant for a directed verdict that plaintiff should not recover any sums over and above the $20,000.00 payment tendered be and the same is hereby allowed.

3. That the cost of this action be taxed against the plaintiff."

Plaintiff appealed to the Court of Appeals, and that court vacated the judgment of the trial court and awarded plaintiff a new trial, with Parker, J., dissenting. Defendant thereupon appealed to this Court as of right pursuant to G.S. 7A-30(2) assigning errors noted in the opinion.

*Josey, Josey and Hanudel by C. Kitchin Josey, attorneys for plaintiff appellee*

*Battle, Winslow, Scott & Wiley, P.A., by Marshall A. Gallop, Jr. and Robert L. Spencer, attorneys for defendant appellant*

HUSKINS, Justice.

The issue presented by this appeal is whether renewals of the surety bond through the payment of annual premiums result in separate and distinct cumulative contracts or whether the renewals are to be construed with the original as one contract only with the maximum liability fixed by the principal amount of the bond.

The plaintiff Town contends the bond and the annual premiums constitute separate contracts for the maximum amount stated in the bond for each year or, in the alternative, for each term Boyd was appointed to the office of clerk by the Town Board. The defendant Surety Company contends that the bond itself sets defendant's contractual obligations and that plaintiff's evidence shows the bond was issued on 31 August 1971, delivered to plaintiff at that time, has been in continuous possession of plaintiff since its issuance and shows upon its face that it was for a continuous or an indefinite term.

Based upon the language used in this particular bond and the facts and circumstances surrounding and occurring subsequent to its execution, we hold the surety bond is a single, continuous contract for a maximum liability of $20,000 over the entire life of the contract.

The extent of liability on a fidelity bond which is renewed from year to year is the subject of a distinct conflict of opinion. A large body of case law construes a fidelity bond accompanied by periodic premium payments as a single, continuous contract where the liability of the surety is limited to a specified amount stated in the bond which cannot be exceeded, although defaults by the principal occur at various times and exceed the stated liability figure in the bond. *See, e.g., American Bonding Co., v. Morrow,* 80 Ark. 49, 96 S.W. 613 (1906); *First National Bank v. United States Fidelity & Guaranty Co.,* 110 Tenn. 10, 75 S.W. 1076 (1903); *see also* Couch on Insurance 2d § 68:46; Appleman, Insurance Law and Practice §§ 6766, 7648. A large body of case law also construes a fidelity bond accompanied by periodic premium payments as separate and distinct contracts upon each of which the surety is liable for defaults by the principal occurring

during the term each is in force to the maximum amount stated in the bond for each individual period. *See, e.g., Middlesboro v. American Surety Co.*, 306 Ky. 367, 211 S.W. 2d 670 (1948); *Massachusetts Bonding & Insurance Co. v. Adams County Commissioners*, 100 Colo. 398, 68 P. 2d 555 (1937); *see also* Couch on Insurance 2d § 68:47; Appleman, Insurance Law and Practice § 7648. Case law in this State applies both rules. *Compare Indemnity Co. v. Hood*, 226 N.C. 706, 40 S.E. 2d 198 (1946), *with Hood v. Simpson*, 206 N.C. 748, 175 S.E. 193 (1934). The reasoning most often applied is that a fidelity bond is continuous and not cumulative, although this is a rule which has been criticized. *See* Annot., 7 A.L.R. 2d 946 (1949); Note, *Fidelity Bonds — Does it Pay to Renew Them?* 27 Mich. L. Rev. 442 (1929).

In our view neither rule need be rejected and the other applied exclusively for all cases. Both are sound positions and can be appropriately applied depending on the facts and circumstances of each case and the bond in question. In fact, the two rules represent the final holdings of courts based on the facts and circumstances of the particular case. Thus, the question in this case is whether the facts and circumstances surrounding this bond and the words of the bond itself demonstrate an intent of the parties to contract for a continuous or a cumulative bond. As a corollary question, the significance of certain statutes and the minutes of the Town Board which reflect the terms the Town Clerk served in his official capacity must be addressed.

The liability of a surety on a fidelity bond is determined by the language of the bond and cannot be enlarged beyond the scope of its definite terms. *Henry v. Wall*, 217 N.C. 365, 8 S.E. 2d 223 (1940). Ambiguities in the wording of a bond are resolved against the party which drafts it, in this case the surety. *Hood v. Davidson*, 207 N.C. 329, 177 S.E. 5 (1934).

The surety bond itself is the only written evidence of the contractual relationship in question here. No subsequent renewal instrument or contractual writing of any sort was introduced into evidence. Only annual premiums were paid on the original bond. This fact alone distinguishes many of the cases which construe a fidelity bond *and* renewal instruments and hold the writings create separate, cumulative contracts. *See, e.g., Miami Springs v. Travelers Indemnity Co.*, 365 So. 2d 1030

(Fla. App. 1978); *Krey Packing Co. v. Employers' Liability Assurance Corp.*, 127 S.W. 2d 780 (Mo. App. 1939); Annot., 7 A.L.R. 2d 946, 971-77 (1949). This is not the sole determining factor. The bond must be examined and construed to determine what the employer purchased with each premium.

Termination and time limitation provisions within the bond are particularly important to the question involved in this case. The bond here contains no termination date. The outside cover of the bond contains the word "Expires" followed by a blank line on which the word "Indefinite" is written. The printed form reads "for the term beginning the _____ day of _____, 19_____, and ending the _____ day of _____, 19_____." The "10th day of September, 1966" was inserted by the parties as the beginning date. The word "ending" was stricken from the quoted clause on the printed form and the words "being continuous" inserted in lieu thereof. No ending date was supplied by the parties. The obligation of the bond was that "if the said Principal shall in all things faithfully perform the duties of his office and shall honestly account for all moneys and effects that may come into his hands in his official capacity during the *said term*, then this obligation to be void, otherwise to remain in full force and effect." (Emphasis added.) The "said term" refers to the term beginning 10 September 1966 and "being continuous." The bond could be terminated only by giving written notice by certified mail to the obligee, and the bond could be terminated only thirty days after notice was mailed and only as to future liability. The termination by notice and not by a specified date implies a continuous contract. *Leonard v. Aetna Casualty & Surety Co.*, 80 F. 2d 205 (4th Cir. 1935).

It is important to note that the bond was entered into on 31 August 1971, yet reached back almost five years to 10 September 1966. This is another factor from the face of the bond indicating a continuous contract which ignores successive terms of office. On its face, the bond was not tied to any period for which Boyd as principal might hold the office of Town Clerk. From 10 September 1966 on, as long as the premiums were paid, the surety was obligated to the face amount of the bond. It should be noted at this point that within the excluded evidence of Boyd's terms of office was evidence that he was first

appointed Town Treasurer on 17 August 1966 and thus implied-
ly first began to handle money which would require a bond.

Courts will generally adopt the construction given a con-
tract by the parties. *Hood v. Simpson, supra.* The only shred of
relevant evidence relating to the treatment of the bond by the
parties prior to the controversy is that annual premiums were
paid upon the bond. Nothing from the Town minutes relevant to
the bond or its renewal was offered. No renewal instrument,
rider or amendment to the bond and no communication, contact
or correspondence of any kind between the parties before the
controversy arose was offered. Nothing tending to show the
intention of the parties — except that annual premiums were
paid — was introduced into evidence. The lack of evidence to the
contrary in the subsequent treatment of the bond indicates
that it was regarded by the parties as a single, continuous
contract and not multiple contracts for each year a premium
was paid or for each term of office to which Boyd was appointed.
*Compare Lee v. Martin,* 186 N.C. 127, 118 S.E. 914 (1923), *rehear-
ing, State v. Martin,* 188 N.C. 119, 123 S.E. 631 (1924); *see general-
ly* Annot., 7 A.L.R. 2d 946, 952-57 (1949).

Where a bond is for an indefinite period running from a
given date, annual premiums do not create a series of yearly
contracts. *Scranton Volunteer Fire Co. v. United States Fidelity
& Guaranty Co.,* 450 F. 2d 775 (2d Cir. 1971); *Columbia Hospital
v. United States Fidelity & Guaranty Co.,* 188 F. 2d 654 (D.C. Cir.
1951); *Brulatour v. Aetna Casualty and Surety Co.,* 80 F. 2d 834
(2d Cir. 1936). Paying annual premiums has no greater effect
than to continue the existing contract. "By the general rule, a
contract of fidelity guaranty insurance, although it may run
indefinitely, runs for but a year at a time, and will not continue
unless the premiums are paid. There is authority, however,
that under a contract of fidelity guaranty insurance, by which,
in consideration of an initial premium and subsequent annual
ones, the insurer undertakes to indemnify the insured against
loss, and which contains no provision for forfeiture or termina-
tion upon nonpayment, the payment of the annual premium is
to be enforced as part of the consideration and not as a condi-
tion, and the obligation of the contract is therefore continuous
and single, and a new assent or affirmative action is not neces-
sary to keep it in force, even on a failure to pay an annual

premium; rather, the contract runs until affirmative action is taken to avoid it." Couch on Insurance 2d § 30:9 (footnotes omitted).

The various terms of office to which Boyd was appointed, as reflected in the minute book of the Town Board, were properly excluded. The excluded evidence was to the effect that Boyd was appointed Town Clerk effective 11 September 1964; that he was appointed Town Treasurer on 17 August 1966; that he was appointed Tax Collector for one year from 1 July 1972 to 30 June 1973; that he was retained as Town Clerk and Finance Officer or Tax Collector in 1973-74, 1974-75, 1975-76, 1976-77 and 1977-78, and nothing appears in the Town minutes for the year 1965 and the years 1967 through 1971. The actual terms of office as manifested in a unilateral document of the Town of which the surety had neither notice nor knowledge is not a relevant fact or circumstance in light of the wording of the bond. An indication in the minutes that, upon each reappointment, Boyd was to obtain a new successive bond for the term would have been relevant. *See* 1 Wigmore on Evidence § 28.

Certain statutes in effect during the life of the bond specify the term and duties of a town clerk. The office of Town Clerk is authorized in G.S. 160A-171; *see also* G.S. 160-273 (repealed 1971). Since 1917, our statutes have required town clerks to be bonded if they handle town money. G.S. 159-29; *see also* G.S. 160-277 (repealed 1971). When the bond in question was entered into, the term of office was "for the term of two years and until his successor is elected and qualified." G.S. 160-273 (repealed 1971). After 1 January 1972, the term was for whatever period the Town in its discretion might set. G.S. 160A-146, -171. No Town ordinance setting the term of office for the Town Clerk was introduced, and we cannot take judicial notice of one if it exists. *Surplus Co. v. Pleasants,* 263 N.C. 587, 139 S.E. 2d 892 (1965). The law in force at the time of execution of a contract will be given full force and effect. *Hood v. Simpson, supra.* The statutes do not require a new bond for each term of a town clerk. *Compare* G.S. 109-3 *with* G.S. 159-29; *see also Lee v. Martin, supra.* A statutory bond must be written in accordance with the provisions of the applicable bonding statute. *Washington v. Trust Co.,* 205 N.C. 382, 171 S.E. 438 (1933); *see generally Howell v. Indemnity Co.,* 237 N.C. 227, 74 S.E. 2d 610 (1953). In *Washington,* the term of office was for six years, while the surety con-

tract recited it was for the first year only. The Court held the bond covered a period of one year only and the obligee accepted the bond with knowledge of the fact:

> "We are aware of the doctrine that official bonds should be liberally construed and that any variance in the condition of such an instrument from the provisions prescribed by law will usually be treated as an irregularity. C.S., 324 [G.S. 109-1]. But this principle does not abrogate the freedom of contract. A bond is a contract between the parties and obligations of the parties are generally not extended by construction beyond their specific engagements. The theory of a surety's liability to the end of the term may be modified by a contractual limitation of time, and the solution of the question is often found in the language of the bond."

205 N.C. at 385, 171 S.E. at 439. By the same token, parties may contract beyond one term of office. The surety bond in the present case is an example of such a contract. Where the one bond is clear and unambiguous in its language, the terms of the bond cannot be extended. *Indemnity Co. v. Hood, supra; Jacksonville v. Bryan,* 196 N.C. 721, 147 S.E. 12 (1929). No factual or statutory basis exists for construing the bond to provide $20,000 coverage each year or for each term of office.

This case is distinguishable from those cases where successive or multiple bonds are given, often by different sureties, for one official during a particular term or terms of office. When coverage has been issued under separate bonds or bonds with different sureties, the coverage is held to be cumulative and not continuous. The first bond is liable to the extent of its penalty amount and the subsequent bond or bonds provide security to the extent of its penalty sum for defaults by the principal above the penalty amount of the first bond. *See, e.g., Pender County v. King,* 197 N.C. 50, 147 S.E. 695 (1929); *Fidelity Co. v. Fleming,* 132 N.C. 332, 43 S.E. 899 (1903); *Pickens v. Miller,* 83 N.C. 543 (1880). By contrast, the case at hand involves but one bond.

The facts and circumstances surrounding the bond in question and the express provisions of the bond itself show that the parties entered into a single, continuous contract. Consequently, the trial court's directed verdict for defendant was proper.

The decision of the Court of Appeals to the contrary is therefore

Reversed.

Justice BROCK took no part in the consideration or decision
of this case.