CITY OF STATESVILLE, NORTH CAROLINA v. GILBERT ENGINEERING CO.

No. 8322SC676

(Filed 5 June 1984)

1. **Arbitration and Award § 1— city's, not federal's, conditions on arbitration controlling**

In an action evolving from a grant obtained by the City of Statesville from the United States Environmental Protection Agency to construct improvements at a wastewater treatment plant where a contract was entered into with defendant to make the improvements, the City of Statesville's own general conditions dealing with arbitration controlled since the federal "General Conditions" stated in the federal regulations had not been specifically included, and since the EPA had been notified of the City of Statesville's election to include its own general conditions and the EPA had not expressed disapproval. Further, defendant's own conduct demonstrated its understanding that the federal "General Conditions" were not applicable since defendant had relied exclusively on the provisions of the City of Statesville's consulting firm's conditions when seeking extensions of time on the contract. Therefore, where the City of Statesville's general conditions allowed arbitration, if mutually acceptable, but contained no mandatory arbitration clause, the trial court correctly determined that federal regulations requiring mandatory arbitration did not apply. G.S. 1-567.18.

2. **Arbitration and Award § 1— federal conditions on arbitration not physically part of contract—not controlling**

In an action on a contract evolving from an environmental protection agency grant to plaintiff where plaintiff opted to substitute its own conditions for the federal "General Conditions" by not physically including the federal "General Conditions" in the contract, there was no merit to defendant's contention that the federal "General Conditions" concerning arbitration controlled where there was a conflict with plaintiff's own conditions. Further, the federal law in force at the time the contract was executed stated that arbitration was voluntary and that the parties must "mutually agree" to arbitrate.

APPEAL by defendant from *Russell G. Walker, Jr., Judge.* Order entered 24 January 1983 in Superior Court, IREDELL County. Heard in the Court of Appeals 11 April 1984.

*Smith, Currie & Hancock, by Thomas E. Abernathy, IV and Neal J. Sweeney, and Raymer, Lewis, Eisele, Patterson & Ashburn, by Douglas G. Eisele, for defendant appellant.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, by George W. House, Michael D. Meeker and Charles C. Green, Jr., for plaintiff appellee.*

BECTON, Judge.

This is an appeal pursuant to N.C. Gen. Stat. § 1-567.18 (1983) from an order granting plaintiff's motion to stay arbitration. We hold that the trial court correctly determined that regulations requiring mandatory arbitration did not apply, and we affirm.

I

Plaintiff, the City of Statesville (Statesville), obtained a grant in June 1976 from the United States Environmental Protection Agency (EPA) to construct improvements at a wastewater treatment plant. Statesville hired Peirson & Whitman, Inc. (P&W), a consulting firm, to prepare the extensive bid documents. EPA had promulgated regulations governing the content of the bid documents. 40 Fed. Reg. 58,602 *et seq.* (1975) (codified at 40 C.F.R. § 35.936 *et seq.* (1976)). One provision thereof, 40 C.F.R. § 35.938-4 (c)(6) (1976), required that EPA grantees physically include in their bid documents these governing regulations, 40 C.F.R. §§ 35.936, 35.938, 35.939 (1976). At the time of the grant, a provision of these governing regulations, 40 C.F.R. § 35-938-8(a) (1976) provided that: "Each construction contract must include the [federal] 'General Conditions' of the 'Contract Documents for Construction of Federally Assisted Water and Sewer Projects,' as revised" (the federal "General Conditions"). On 20 September 1976 EPA issued a "class deviation," an administrative variance which allowed *optional* inclusion of the federal "General Conditions." An EPA final rule dated 29 December 1976 and effective 1 February 1977 codified the option in a revised 40 C.F.R. § 35.938-8, by deleting 40 C.F.R. § 35.938-8(a) (1976), the mandatory inclusion provision. 41 Fed. Reg. 56,636 (1976) (codified at 40 C.F.R. § 35.938-8 (1977)). P&W had worked on federal contracts and preferred its own general conditions which allowed arbitration, if mutually acceptable, but contained no mandatory arbitration clause. P&W included its general provisions in the bid document, which later became the contract itself.

Bids opened in March 1977, and in July 1977 defendant Gilbert Engineering Co. (Gilbert) entered into a contract with Statesville. The contract document included the P&W conditions and the required regulations, but 40 C.F.R. § 35.938-8 appeared in its unrevised form, with the language requiring inclusion of the federal "General Conditions." Disputes arose almost immediately

regarding extensions of time due to weather delays. Gilbert completed the work in 1981. In October 1982 Gilbert demanded arbitration of the still unresolved disputes. From the grant of Statesville's motion to stay arbitration, Gilbert appeals.

The trial court sat as the finder of fact and made extensive findings of fact and conclusions of law. The findings are binding on appeal if supported by the evidence, even though there may be evidence to the contrary; conclusions of law are, however, reviewable *de novo* on appeal. *Humphries v. City of Jacksonville*, 300 N.C. 186, 265 S.E. 2d 189 (1980).

It is clear that Statesville had the option to include its own general conditions. The class *deviation*, in September 1976, provided that the inclusion of the federal "General Conditions" would be optional, at minimum, in contracts which had not already "gone to bid." It is undisputed that the EPA final rule, effective 1 February 1977, codified the option and that the project did not go to bid until March 1977.

## II

**[1]** Did Statesville exercise its option? Although the federal regulations governing these contracts are lengthy, they did not direct how to exercise the option not to include the federal "General Conditions." Absent a stated procedure, the ordinary rules of contract formation apply.

Statesville's evidence showed that in a telephone conversation in late 1976, P&W notified the responsible EPA officials of Statesville's election to include its own general conditions. Moreover, the contract received EPA approval (there is no evidence of disapproval, and EPA apparently paid out the grant money), although the contract contains some forty pages of P&W's conditions. However, the unrevised version of 40 C.F.R. § 35.938-8, which required inclusion of the federal "General Conditions," had not been scratched out or changed by addendum. Either method would have been an acceptable way to indicate an election, according to testimony by an EPA grants specialist. We note, however, that the regulation which required inclusion of the EPA governing regulations, 40 C.F.R. § 35.938-4(c) (1976), does not allow on its face the *non-inclusion* of any of its separate provisions in the event of administrative amendments such as the class

deviation. The provision in question requires the *inclusion*, not the incorporation by reference, of the federal "General Conditions." 40 C.F.R. § 35.938-8(a) (1976). Under the circumstances, this means physical inclusion, since the regulations themselves were already incorporated by reference elsewhere, 40 C.F.R. § 35.938-4(c)(5) (1976), with a separate requirement that they be "included." 40 C.F.R. § 35.938-4(c)(6) (1976). Since the contract does not physically include the federal "General Conditions," the trial court could find that Statesville had properly opted to use its own conditions, and that the federal "General Conditions" therefore were not part of the contract. *Humphries v. City of Jacksonville*.

III

Gilbert's own conduct clearly demonstrates its understanding that the federal "General Conditions" are not applicable. Gilbert admitted reviewing the entire contract, including the P&W conditions. In a letter to Statesville dated December 1977, Gilbert relied exclusively on the provisions of the P&W conditions, when seeking an extension of contract time. In a letter dated August 1979, seeking an adjustment of the contract price, Gilbert relied instead on the federal "Supplemental General Conditions," 41 Fed. Reg. 56,638 (1976) (codified at 40 C.F.R. § 35 Subpart E, App. C-2 (1977)), which were indeed a mandatory provision of the construction contract. *See* 40 C.F.R. § 35.938-8 (1977). The first evidence that Gilbert considered the federal "General Conditions" applicable, other than Gilbert's oral testimony as to its subjective impressions, is the demand for arbitration filed late in 1982, over five years after the contract had been executed. It remains a fundamental principle of contract interpretation that the practical interpretation given a contract by the parties constitutes the best evidence of its meaning. *See Peaseley v. Virginia Iron, Coal & Coke Co.*, 282 N.C. 585, 194 S.E. 2d 133 (1974). Gilbert's own conduct provided solid evidentiary support for the court's order.

We therefore conclude that the trial court properly found that the contract included the P&W conditions.

IV

[2] Gilbert next contends that under Statesville's own conditions the federal "General Conditions" control whenever there is a conflict. We disagree.

Gilbert relies on the following language from the P&W Supplemental General Conditions: "In the event of conflict with other requirements of the Contract Documents, the following provisions must be complied with. . . ." The 1976 unrevised version of 40 C.F.R. § 35.938-8, which required inclusion of the federal "General Conditions," is among the "following provisions" of the P&W Supplemental General Conditions. As in part II, *supra*, in which we concluded that Statesville properly opted to substitute its own conditions for the federal "General Conditions" by not physically including the federal "General Conditions" in the contract, the physical inclusion of the federal "General Conditions" would have been a prerequisite to Gilbert's success on this argument.

## V

Assuming, *arguendo*, that Gilbert's interpretation of the P&W Supplemental Conditions in part IV, *supra*, were correct, it still renders Gilbert little aid. An elementary rule of contract interpretation is the law in force at the time the contract is executed controls. *Town of Scotland Neck v. Western Sur. Co.*, 301 N.C. 331, 271 S.E. 2d 501 (1980). Gilbert relies on 40 C.F.R. § 35.938-8(b) (1976), which provides: "each construction contract must include the [federal] 'Supplemental General Conditions' set forth in Appendix C-2 to this subpart." The relevant amended version of Appendix C-2 was adopted effective 1 February 1977, before bidding opened. 41 Fed. Reg. 56,638 (codified at 40 C.F.R. § 35 Subpart E, App. C-2 (1977)). The preamble to Appendix C-2 expressly states that "[i]n case of any conflict between the standard [federal] 'General Conditions,' if elected to be used by a grantee, and Appendix C-2, Appendix C-2 provisions govern." 41 Fed. Reg. 56,635. Pursuant to Appendix C-2, arbitration is voluntary; the parties must "mutually agree" to arbitrate. 40 C.F.R. § 35 Subpart E, App. C-2 cl. 7. This conflicts directly with the mandatory arbitration provision in federal "General Conditions" and, therefore, the Appendix C-2 voluntary arbitration provision would govern. Gilbert attempts to circumvent this result by arguing that Statesville is bound by the law in force in July, 1976, at the time of the EPA grant. There is no authority for such a rule; to the contrary, the regulations themselves clearly differentiate the EPA grant agreements with the municipalities from the contracts the municipalities enter into with private firms. *See* 40 C.F.R. § 35.936-1 (1976). We are persuaded that the law in force at

the time Gilbert executed the contract, not at the time of the original grant, controls.

We therefore conclude that the evidence supports the findings of fact, and the findings support the conclusions of law. The order appealed from is

Affirmed.

Judges WELLS and JOHNSON concur.