STATION ASSOCIATES, INC.; LLOYD L. ALLEN, SR.; SUSAN BARNETTE BURNS; JERRY JAMES BARNETTE; MARK TY BARNETTE; KEVIN CLAY BARNETTE; JANET EVERITT BOYETTE; CORDELIA B. DAVIS; MARGARET GENDREUX CROW; MYRTLE ESTELL GENDREUX WATSON; DOROTHY EVERITT BOND; AND HARRY CLARK COOPER, PLAINTIFFS v. DARE COUNTY, DEFENDANT

No. COA97-420

(Filed 7 July 1998)

**1. Deeds— estate conveyed—intent of parties**

The grantor of real property for the Oregon Inlet Life-Saving Station intended in 1897 to convey an estate of less dignity than a fee simple absolute, namely, a fee simple that would end when a life-saving station was no longer operated on the property. Provisions in the granting clause are entirely inconsistent with an intent to convey a fee simple absolute; the failure of the United States to include the words "fee simple" in the Treasury Department form deed left the *granting clause ambiguous* and ambiguities in written instruments are to be strickly construed against the drafting party; the deed's habendum clause does not restrict the estate conveyed; the apparent conflict between the granting and habendum clauses may be resolved by resort to the

rule of construction favoring the nondrafting party and by examining the deed's warranty clause, which indicates an intent to convey an estate of potentially limited duration, not a fee simple absolute.

**2. Eminent Domain— ambiguity as to property condemned— taking by federal government—issue of fact**

Judgment on the pleadings should not have been granted for either party in an action to determine ownership of property formerly used as the Oregon Inlet Life-Saving Station where the 1959 Declaration of Taking which created the Pea Island Migratory Waterfowl Refuge was ambiguous as to what property the United States intended to condemn.

Appeal by plaintiffs from orders entered 23 September 1996, 6 January 1997, and 29 January 1997 by Judge James E. Ragan, III in Dare County Superior Court. Heard in the Court of Appeals 3 December 1997.

*Moore & Van Allen, PLLC, by David E. Fox and Jeffrey M. Young, and Young, Moore & Henderson, by John N. Fountain, for plaintiffs-appellants.*

*Womble Carlyle Sandridge & Rice, PLLC, by Robert H. Sasser, III and Mark A. Davis, and H. Al Cole, Jr., Dare County Attorney, for defendant-appellee.*

LEWIS, Judge.

This case involves a dispute over the ownership of approximately ten acres of land located on Hatteras Island in Dare County ("the Property"). The Property is described in a deed dated 8 March 1897 ("1897 Deed"), which reads:

Treasury Department
Life-Saving Station—Form No. 12.

Whereas, The SECRETARY OF THE TREASURY has been authorized by law to establish the LIFE-SAVING STATION herein described;

And whereas, Congress, by Act of March 3, 1875, provided as follows, viz.: "And the Secretary of the Treasury is hereby authorized, whenever he shall deem it advisable, to acquire, by donation or purchase, in behalf of the United States, the right to use and

occupy sites for life-saving or life-boat stations, houses of refuge, and sites for pier-head Beacons, the establishment of which has been, or shall hereafter be, authorized by Congress;"

And whereas, the said Secretary of the Treasury deems it advisable to acquire, on behalf of the United States, the right to use and occupy the hereinafter-described lot of land as a site for a Life-Saving Station, as indicated by his signature hereto:

Now, this Indenture between Jessie B. Etheridge, party of the first part, and the United States, represented by the Secretary of the Treasury, party of the second part, WITNESSETH that the said party of the first part, in consideration of the sum of two hundred dollars by these presents grant[s], demise[s], release[s], and convey[s] unto the said United States all that certain lot of land situate in Nags Head Township, County of Dare and State of North Carolina, and thus described and bounded: Beginning at a cedar post bearing from the South West corner of the Oregon Life Saving Station South 40° West and distant 28.24 chains from said post South 68 West 10 chains to post, thence South 22° E. 10 chains to post. Thence North 68° E. 10 chains to post. Thence North 22° W. 10 chains to first Station containing 10 acres, be the contents what they may, with full right of egress and ingress thereto in any direction over other lands of the grantor by those in the employ of the United States, on foot or with vehicles of any kind, with boats or any articles used for the purpose of carrying out the intentions of Congress in providing for the establishment of Life-Saving Stations, and the right to pass over any lands of the grantor in any manner in the prosecution of said purpose; and also the right to erect such structures upon the said land as the United States may see fit, and to remove any and all such structures and appliances at any time; the said premises to be used and occupied for the purposes named in said Act of March 3, 1875:

To have and to hold the said lot of land and privileges unto the United States from this date.

And the said party of the first part for himself, executors, and administrators do[es] covenant with the United States to warrant and defend the peaceable possession of the above-described premises to the United States, for the purposes above named, for the term of this covenant, against the lawful claims of all persons claiming by, through, or under Jessie B. Etheridge.

And it is further stipulated, that the United States shall be allowed to remove all buildings and appurtenances from the said land whenever it shall think proper, and shall have the right of using other lands of the grantor for passage over the same in effecting such removal.

In witness whereof, the parties hereto have set their hands and seals this 8th day of March, A.D. eighteen hundred and ninety-seven.

Signed, sealed, and delivered in presence of—

(s)J.B. Etheridge

(s)L.J. Gage
Secretary of the Treasury

The underlined words were handwritten in the original. The rest were preprinted on the form.

After the 1897 conveyance, the Life Saving Service, a part of the United States Treasury Department, began operating a lifesaving station on the Property. Sometime before 1915, the Life Saving Service became part of the newly created Coast Guard, which was also administered by the Treasury Department. The Coast Guard continued to operate on the Property a lifesaving station known as the Oregon Inlet Coast Guard Station.

In 1938, the United States condemned a large tract of land in Dare County to create the Pea Island Migratory Waterfowl Refuge. The Property at issue in this case was within the metes and bounds description of that tract, but it was expressly excluded from the 1938 condemnation.

In 1959, the United States condemned a series of tracts in Dare County for the purpose of including them within the Cape Hatteras National Seashore Recreational Area. The Declaration of Taking states that the land selected for acquisition includes

those certain tracts of land known in the land acquisition records of the Cape Hatteras National Seashore Recreational Area as Tracts 101-B, 101-C, 301, 302, [et al.] . . . more particularly described in exhibits attached hereto and made a part hereof as Exhibits A through P and maps attached hereto and made a part hereof . . . .

The Declaration further states that "the estate taken for said public use is the full fee simple title in and to the said lands." Among the exhibits attached to the Declaration of Taking is Exhibit P, which states that one of the tracts to be condemned was

> *That portion of the Hatteras Section* within Kinnakeet Township as depicted on said Drwg. No. NRA-CH-7017-B as *comprising the Pea Island National Wildlife Refuge which,* pursuant to Section 5 of the act of August 17, 1937 (50 Stat. 669), providing for the establishment of the Area, *is included therein and administered by the National Park Service for recreational uses* and as delineated on the Fish and Wildlife Service Pea Island National Wildlife Refuge Drawing No. 71 PEA 36A, being the National Park Service acquisition area and more particularly described as follows: . . .

[Metes and bounds description]

(emphasis added). It is undisputed that the metes and bounds description in Exhibit P includes the Property at issue in this case, even though the Property was not a part of the Pea Island Refuge.

In December 1989, the Coast Guard abandoned the lifesaving station located on the Property. On or about 17 July 1992, the United States executed a quitclaim deed whereby it gave any interest it may have had in the Property to defendant Dare County.

Plaintiffs claim title to the Property through the 1897 Deed. They argue that the 1897 Deed conveyed to the United States a fee simple determinable in the Property, that the land condemned in 1959 did not include the Property, and that in 1989, when the United States ceased using the Property as a lifesaving station, the interest of the United States terminated and title vested in plaintiffs. Plaintiffs allege that they are the heirs and successors of Jessie B. Etheridge.

Plaintiffs and defendant each moved for judgment on the pleadings as to the quiet title action. The trial court denied plaintiffs' motion and granted defendant's motion. Plaintiffs appeal.

Judgment on the pleadings is appropriate when all material allegations of fact are admitted in the pleadings and only questions of law remain. *Ragsdale v. Kennedy,* 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974). In this case, two questions must be answered before the quiet title action can be resolved: (1) What estate was conveyed by the 1897 Deed? (2) What property was condemned by the 1959 taking? The

first issue involves only legal interpretation. The second issue, however, depends upon the resolution of a hotly disputed issue of material fact, and so judgment on the pleadings in the action to quiet title should not have been granted for either party. We discuss the two issues below.

### The 1897 Deed

[1] In North Carolina, real estate is presumed to be conveyed in fee simple unless the grantor intended to convey an estate of less dignity. N.C. Gen. Stat. § 39-1 (1984). The courts of this state recognize the rule that deeds are to be construed "most favorably to the grantee, and all doubts and ambiguities are [to be] resolved in favor of the unrestricted use of the property." *Stegall v. Housing Authority*, 278 N.C. 95, 100, 178 S.E.2d 824, 828 (1971).

It is the intent of the parties, however, that controls the construction of a deed. *Mattox v. State*, 280 N.C. 471, 476, 186 S.E.2d 378, 382 (1972). The parties' intent is to be gathered from the entire instrument; " '[I]f possible, effect must be given to every part of a deed, and no clause, if reasonable intendment can be found, shall be construed as meaningless.' " *Id.* (quoting *Willis v. Trust Co.*, 183 N.C. 267, 269, 111 S.E. 163, 164 (1922)).

The deed's granting clause states that the Property conveyed was to be "used and occupied for the purposes named in said Act of March 3, 1875"—that is, "for life-saving and life-boat stations, houses of refuge, and sites for pier-head Beacons." It is true that, by itself, this statement of purpose would not create an estate inferior to a fee simple. *See Ange v. Ange*, 235 N.C. 506, 508-09, 71 S.E.2d 19, 20-21 (1952). However, the granting clause also gives the United States "the right to erect such structures upon the said land as the United States may see fit," in furtherance of establishing and maintaining a lifesaving station, as well as the right to "remove all buildings and appurtenances from the said land whenever it shall think proper." These provisions are entirely inconsistent with an intent to convey title in fee simple absolute.

We recognize that a fee simple may be conveyed by an instrument that does not contain the words "fee simple." *See* N.C.G.S. 39-1. But the failure of the United States to include the words "fee simple" in this Treasury Department form deed has left the granting clause ambiguous.

Our interpretation of the granting clause is governed by a settled rule of law in North Carolina: Ambiguities in written instruments are to be strictly construed against the drafting party. *See, e.g., Baxley v. Nationwide Mutual Ins. Co.*, 334 N.C. 1, 7, 430 S.E.2d 895, 899 (1993) (insurance contract); *Jones v. Palace Realty Co.*, 226 N.C. 303, 305, 37 S.E.2d 906, 907 (1946) (ordinary contract); *Town of Scotland Neck v. Surety Co.*, 301 N.C. 331, 335, 271 S.E.2d 501, 503 (1980) (surety bond). In this case, the United States government produced the form deed signed by Mr. Etheridge. Applying the rule stated above, we construe the granting clause as manifesting an intent to convey an estate of less dignity than a fee simple absolute.

In contrast, the deed's habendum clause does not restrict the estate conveyed. Standing alone, the habendum clause indicates an intent to convey title in fee simple absolute. The apparent conflict between the granting and habendum clauses may be resolved by resort to the rule of construction favoring the non-drafting party, *see cases cited supra*, and by examining the deed's warranty clause.

The deed contains a covenant of special warranty in its sixth paragraph. *See Spencer v. Jones*, 168 N.C. 291, 292, 84 S.E. 261, 261 (1915). A covenant of warranty runs with the land. It continues so long as the estate to which it is attached continues, *Lewis v. Cook*, 35 N.C. 193, 194-95 (1851), and it ends when the estate to which it is attached terminates, *Register v. Rowell*, 48 N.C. 312, 315 (1856).

The deed states that the covenant of warranty is to last for a "term," a word whose plain meaning is "a limited period of time." *The American Heritage Dictionary of the English Language*, 1852 (3d Ed. 1996). There is nothing in the deed to suggest that the covenant of warranty would end before the estate to which it was attached ended. The covenant thus indicates an intent to convey an estate of potentially limited duration, not a fee simple absolute.

Construing the deed as a whole, we conclude that the grantor intended to convey an estate of less dignity than a fee simple absolute: namely, a fee simple that would end when a lifesaving station was no longer operated on the Property. Our resolution of this issue finds accord in *Etheridge v. United States*, 218 F. Supp. 809, 813 (E.D.N.C. 1963)—wherein Judge Larkins concluded that a deed nearly identical to the deed in this case conveyed a determinable fee—and in several cases from other jurisdictions interpreting deeds quite similar to this one. *See United States v. Beals*, 250 F. Supp. 440

(D.R.I. 1966); *United States v. Roebling*, 244 F. Supp. 736 (D.N.J. 1965); *Mayor of Ocean City v. Taber*, 367 A.2d 1233 (Md. 1977).

Plaintiffs assert that when the United States quit operating a life-saving station on the Property in 1989, title to the Property vested in themselves—the heirs and successors of Jessie B. Etheridge. Defendant counters that even if the 1897 Deed created a determinable fee, the estate was condemned in 1959, title in fee simple was taken by the United States, and any reversionary interests in the Property were extinguished.

## The 1959 Taking

[2] The Declaration of Taking is ambiguous as to what property was condemned. On the one hand, it describes the property taken as "[t]hat portion of the Hatteras Section . . . comprising the Pea Island National Wildlife Refuge which . . . is included therein and administered by the National Park Service for recreational uses." This description unquestionably excludes the Property, because in 1959 it was neither a part of the Pea Island National Wildlife refuge nor was it administered by the National Park Service. It was under the jurisdiction of the Treasury Department and it was being used as a Coast Guard station.

On the other hand, the Declaration states that the property taken is "more particularly described" by a metes and bounds description which unquestionably includes not only the Pea Island National Wildlife Refuge, but also the Property. The Declaration also incorporates by reference a map depicting the property taken, and it appears to include the Property.

The determination of what property is taken in a federal eminent domain proceeding is controlled by federal law, not state law. *United States v. 93.970 Acres of Land*, 360 U.S. 328, 332-33, 3 L. Ed. 2d 1275, 1278-79 (1959); *United States v. Certain Interests in Property, Etc.*, 271 F.2d 379, 384 (7th Cir. 1959), *cert. denied*, 362 U.S. 974, 4 L. Ed. 2d 1010 (1960); *Klein v. United States*, 375 F.2d 825, 829 (Ct. Cl. 1967), *cert. denied*, 389 U.S. 1037, 19 L. Ed. 2d 824 (1968). Federal law provides that in construing a declaration of taking, the intention of the United States, as author of the declaration, is to be gathered from the language of the entire declaration and the circumstances surrounding the taking. *United States v. Pinson*, 331 F.2d 759, 760-61 (5th Cir. 1964); *Bumpus v. United States*, 325 F.2d 264, 266 (10th Cir. 1963); *United States v. 76.208 Acres of Land, More or Less*, 580 F. Supp.

1007, 1010 (E.D. Pa. 1983). *See also Pinson*, 331 F.2d at 760; *Bumpus*, 325 F.2d at 266 (where no federal law exists, courts must look to applicable principles of general law).

In this case, the ambiguity as to what property the United States intended to condemn is a latent ambiguity. *See Root v. Insurance Co.*, 272 N.C. 580, 587-88, 158 S.E.2d 829, 835-36 (1968). As such, the intent of the condemnor in the Declaration of Taking is an issue of fact. *See id.* at 590, 158 S.E.2d at 837; *Jefferson-Pilot Life Ins. Co. v. Smith Helms Mulliss & Moore*, 110 N.C. App. 78, 81-82, 429 S.E.2d 183, 185-86 (1993). Plaintiffs allege in their pleadings that the United States did not intend to condemn the Property at issue in this case. Defendant denies this allegation and asserts the opposite. It follows that the United States' intent as to the 1959 taking is a material fact not resolved by the pleadings, and judgment on the pleadings should not have been granted for either plaintiffs or defendant.

The judgment of the superior court is reversed, and this case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

Judges WALKER and TIMMONS-GOODSON concur.